# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Henry W Geter II**
100 Mich. Ave. N.E.  Suite A-11
Washington DC  20017
202/986-2264
    **(Plaintiff)**
    vs.

                    **Case File No:  07-CV-0757    RBW**

**Horning Brothers Corporation**
1350 Conn. Ave.  N.W. Suite 800
Washington D.C. 20036

**Trinity LP**
100 Mich. Ave. N.E.  Suite A-21
Washington D.C.  20017

                    ***DISABILITY DISCRIMINATION FILING***
                    **FAIR HOUSING VIOLATION**

**Ms. Veda S. Brinkley**
Assistant Property Manager
Trinity Community LLP
1350 Conn. Ave.  N.W. Suite 800

                    ***(THE CLOISTERS)***

**Ms. Connie Fletcher**
Manager the Cloisters
100 Mich. Ave. N.E.  Suite A-21
    **(Defendants)**

                    **REASONABLE ACCOMMODATION**
                    ***UNDER THE FAIR HOUSING ACT***

                    **~ CIVIL RIGHTS ACT of 1968 ~**
                    AS AMENDED

## MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS ANSWER PRESENTING DEFENSES

**WITNESSETH: Title 42 U.S.C. Section 1983**  [Overview] **Every person** who, under color of any statute... subjects ... any citizen of the United States... to the deprivation of any rights, privileges ... secured by the Constitution and laws, shall be liable to the party injured  in an action at law, suit in equity ... etc.   Above Defendants are liable hereto, upon the exact language of this Title, and the ***combing of laws***  bound to this memorandum.

**Plaintiff ~ Declaring** that the Discriminatory Housing Practices of the Defendants as set forth below  violated  Federal Laws, **42 U.S.C. ss 3601, et. Seq.;  Title VIII of the Civil  Rights Act of 1968,** as amended; **The  Fair Housing Act of 1988.** These underlined Statutes govern the cause of action of this complaint, and are held upon the defendants conduct.

**The Law Citing: In** one complaint a plaintiff may bring separate cause of action under section 1983 and state due process clause. Const. Declaration of Rights Act. 24 | Samuels v. Tschechtelin, 763 a. 2d 209, 135 MD app. 483 |

# RECEIVED

SEP – 4 2007

**NANCY MAYER WHITTINGTON, CLERK**
**U.S. DISTRICT COURT**

**COME THE DEFENDANTS** answer presenting defenses this _Twenty_ , the _20th_ day of _August_ 2007, from their attorney in response to Plaintiff's Complaint.

**COMES NOW, PLAINTIFF** H.W. Geter II memorandum in opposition to Defendants answer to Complaint. In support of his Complaint, Plaintiff Memorandum satisfies Fed. R. Civ. P. 8, alleges facts that can be held unto points of law, unto each element/issue of its Claim, being summarized therewith and upon the following:

On February 16th, 2007, at approximately 8:12 pm., Plaintiff was Officially issue a _" Notice to Cure Violation or Vacate "_, from the night Security Guard ... Mr. Andrew, therefrom the Apartment Complex - The Cloisters, held to the management of the Horning Brothers, and submitted by Ms. Veda S. Brinkley Assistant Property Manager. Briefly looking upon its Origin and the action behind its delivery, the Plaintiff ... commenting to Mr. Andrew , what's this?... He informing him ~ He is only the deliverer and not the messenger. How embarrassing! ~ for this documents was handed to the Plaintiff from a Clip Board, open documents ...for the Guard to read its _official private content_; prior to its delivery. After signing for it receivership, the Plaintiff then fully reviewed the content of the message (alternative actions), upon which the communication was placed.

Here an immediate attention was addressed to the reasoning behind this action. It was very clear that this action and the _conduct of Management_, had no Breach of Contract Law to remove a Tenant from his tenancy; _was without any legal boundaries of the law._ And that to

**Pg 1**

fully address the restless activities now before him, would require the full ownership of his legal rights; that have been denied to the Plaintiff for four years. Unto this fact and holding upon the conduct of Management and its staff; over this period of time, the *Plaintiff Complaint is foundation upon the Federal Protected Rights of the Law.* **The Civil Rights Act of 1968**.

**Horning Brothers** management as a Corporation, is entrusted by their Contracts to have within there Administrative Manual ~ operating policies, addressing the professional procedures, regulations and rulings of law defined upon the official management of there business, as *Contracted Services* ... to several Apartment Complexes throughout the Metro Washington Community. Their Professional[1] Manager's are then provided with bulletins, updates and those Federal Law's [**duties**] which shall be attached to its Professional Agenda as property managers, ...they! being liable thereto Section 1983 of Title 42 USC ~ *__Every person__*.

Within the business arena of Rental Housing, the law has establish and defined what violations are governed to its review, where a renter (tenant) may come before it, by filing a complaint to **HUD** and or lawsuit, which the tenant believes[2] to be a harm to its protection of rights. Having received the material provided by Horning Brothers management it was well establish that the general understanding upon the Lease Agreement, signed by the Tenant, provided no foundation to underline the actions held to its direct placement upon the tenant. However it does

**Pg 2**

---

[1]. Tenn.Ct.App. 1999. Professionals are judged according to the standard of care required by their profession. – *Jennings v. Case, 10 S.W.3d 625, appeal denied.* ... Colo. App. 2005   Tortious conduct arises from a breach of a duty impose by law, not by contract. - Adams ex rel. Adams v. City of Westminster, 140 P.3d 8. Certiorari denied.

[2]. S.D. Iowa 2003  A corporation may only be held liable for the torts of its employees when the employee is acting within the scope of his or her employment;  the conduct must be necessary to accomplish the purpose of the employment and is intended for such purpose. - Jennings v. Mid-American Energy., *282 F.Supp.2d 954.* ...  A torteasor must compensate a tort victim for all of the damages occasioned by his act. LSA -C.C. art. 2315 McGee v. A.C. And S, Inc. 933 So.2d 770, 2005-1093 (L.A. 7/10/07).

allow one to focus upon the dishonesty[3] of the personal, and as well as, bring into evidence the conduct of this ***Corporation and its professional management staff*** to violate the statue of laws, which <u>protect the rights of this tenant</u>; especially where no legal authority could frame its actions. This conduct! directing the Plaintiff before the court today, can be viewed upon those actions, inactions and harms seeded to the violation raised. Plaintiff having provided to management his understanding of the law; weighted to their " wanton and willful acts."[4] It being filed unto this Complaint as claims: Fair Housing Act Violation, Intention Misrepresentation, Negligence and Discrimination; ***factors given to the Plaintiff***

***rights to equal protection of the law.***

Yet it is also understood by the courts that prior to the filing of a Complaint, that the Plaintiff would be best to examine the legal boundaries of the law, which would placed unto its docket, legal comments whose analysis unto the complaint is binding. That the evidence presented here would frame the cause of action brought before its review, and that the legal arguments that may be challenged. And that Plaintiff can via direct and or indirect evidence establish a ***legal footing*** to the relief ask for. Defendants are subject to Respondeat Superior/Vicarious Liability.

This analysis of the law is *Now* ... first placed upon the document received by the Plaintiff as mentioned hereto the above. The legal footing's held to this Analysis is given to the Violation.

**Pg 3**

---

[3]. U.S. 2000  As general principle of evidence law, the fact finder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt. – Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097 [<u>See Insert 18 ...& Letter of Determination ~ **Charging Defendant with DISCRIMINATION.**</u>]

[4]. N.C.App. 1999  A "wanton" act is an act done with a wicked purpose or done needlessly, manifesting a reckless indifference to the rights of others. – Benton v. Hillcrest foods, Inc. 524 S.E.2d 53... an act is "willful" when there is a deliberate purpose not to discharge a duty, assumed by the contract or imposed by law, necessary for the safety of the person or property of another. –Id. [ See Letter of Determination ~ **Yellow Highlighted Notes**]

**In Receivership of the document entitled ~ Material Evidence A.**   The key elements of this document [ material evidence[5] ] is center to the Law;  having it eyes upon its procedural standing. The appropriate way to examine this material,  is to review the issues attached to the document.

Issue 1. Here the document raised concern ... to 'Cure Late Payments' establish by the Plaintiff. The law however,  reflects the standards addressing this concern unto why this matter is held, to legal boundaries of the Fair Housing Act [Law].

*Legal Text:*     **Breach of Contract ~ Lease Agreement**

> **Rubin v. Glasner**                     **Aug. 2nd, 2002**
> When a landlord knowingly accepts rent from a tenant with knowledge of an alleged Breach of the Tenant's Lease over an <u>extended period</u>. The Landlord has been held to have waived its rights to object to the Breach.

Plaintiff **Material Evidence B ...** establish this late payments was borne back in 2003, that unto this <u>extended period of time</u>, Defendants have waived their rights.

*Legal Text:*     **Boundary's Upon the Lease Agreement**

> **Uptown Gambit v. Penque**                **Sept. 4th, 2002**
> Notice to Cure based on an alleged substantial violation of the tenancy must <u>cite the lease provision</u> the tenant has allegedly violated and must cite facts as to <u>how that provision was violated.</u>

Within the Tenant Lease Agreement there is <u>'no provision' mentioned</u>, citing the stated <u>legal violation</u>, and there is <u>no defined dates</u> giving raise to its merit.

**Pg 4**

*Legal Text:*     **Reasonable Accommodations**

---

[5]. Va. 1995 Generally, litigant is entitled to introduce all competent, material, and relevant evidence tending to prove or disprove any material issue raised, unless evidence violates specific rule of admissibility. — Tarmac Mid-Atlantic, inc. v. Smiley Block co., 458 S.E.2d 462, 259 Va. 161.

**Matter of T.K. management Inc. V. Gatling** Nov. 2ⁿᵈ, 2002
Landlord is <u>obligated to provide reasonable accommodations</u>
in the form of a wheelchair ramp, wider doorways and a lift
<u>for the tenant with disability.</u>

Here the court establish... that some form of reasonable accommodation is duly
<u>obligated [ as a duty ]</u>, upon tenants to whom there is a disability.

*Legal Text:*     **Ninety Days Rules ~ Actual Knowledge**

**Montemuino v. Gelber**                    June 9ᵗʰ, 2003
Landlord <u>waived his right</u> to invoke the "no-pet clause" upon
finding that he failed <u>to commence holdover proceeding</u>
<u>within ninety days after having actual knowledge</u> of tenant's
dog's.

Where the Landlord have <u>actual knowledge of a tenant failings</u> placed to holdover
proceeding's, this awareness upon the failing with the Court is ninety days, other-
wise his efforts to seek a legal resolve upon the court is waived; <u>actual know-</u>
<u>ledge of the Plaintiff failing were within the year 2003</u>, not 2007, as raised by the
Landlord Notice. [ *See Attachment* **Material Evidence C** ] ... <u>far beyond 90 days.</u>

The Plaintiff [6] bring's unto this Court ... that the Owner ~ Trinity LP, Horning Brothers and

its management staff, failed to object in the past years to any *Habitual Late Payments*, but

ONLY ~ beginning February 16ᵗʰ, 2007! to demand timely rent; and has no boundaries

of law to support its effort and its inaction [ negligence ], now contemplating its action

as a just cause for eviction. *That! Defendants' conduct violates Fair Housing Act, 42 U.S.C. ss*

*3601, et.seq. And should be declared unlawful and permanently enjoined, and appropriate*

*money damages should be awarded... held to 3604 (f)(3)(B).*

**Pg 5**

Issue 2. Where the document raised concern... to 'Cure Late Payments' establish by the

---

[6]. Mo.App. W.D. 2000   Persons are conclusively presumed to know the law. — In re Estate of
Pittman, 16 S.W.3d 639, rehearing, transfer denied, and transfer denied.

Plaintiff. It then give's one the opportunity to address fully the action or inaction of the Defendants. Bringing into evidence the conduct activity held to the Duty of Care.

### *Legal Duty:*   **Federal Law Place To The Disable**

**HUD Notice # 01-02** . ... Requires housing providers to make reasonable accommodations* for persons with disabilities.

A reasonable accommodation is a change in rules, policies, practices, or services so that a person with a disability will have an equal opportunity to use and enjoy a dwelling unit or common space. **That** reasonable accommodations may be necessary at all stages of the housing process, ***including*** application, tenancy, or ***to prevent evictions.***   * [see Case History Summary below ... pg 10]

Having been made known of this legal duty... did the Defendants make any adjustments to their rules, policies, and practices, which would support the request made by the Plaintiff to Cure. Attachment B ~ Material Evidence; submitted to the Defendants as a *Notice Upon the Law Filing*, upon which would allow the Defendants to address the violation given to their administrative conduct. That their conduct seen upon the receivership of the 'Cure Notice,' was not attached to the policies and rules of the ***Civil Rights Act of 1968.***[7] Which is in violation of the law; ***42 U.S.C. s3604(f)(3)(B)*** ~ ...and given too! being Negligence of the Law.

In the review of this Notice! Defendants could not bring in argument that they were unaware[8] of

Pg 6

this federal law, when as a housing provider its management personal should have been instructed to

---

[7].Ga.App. 1999   Violation of a statute constitutes negligence per se if the injured person falls within the class of persons intended to be protected by the statute and the harm complained of was the harm the statute was intended to guard against. – Childers v. Monson, 524 S.E.2d 326, 241 Ga.App. 70, reconsideration denied.

[8].Miss. 2001. Foreseeability is an essential element of both duty and causation. (Per Waller, J., with three Judges concurring and one Judge specially concurring.) – Delahoussaye v. Mary Mahoney's, Inc., 783 So.2d 666, rehearing denied.

make themselves known of the federal laws blanking their professional employment. Further it can be place that the conduct of management appears to be establish upon an illegal retaliatory attempt to evict the Tenant without just cause. This action Too! Has a legal boundary of the law, where (4) four actions are seen to secure its present: a) *eviction action or the threat of it*, b) non-renewal of the lease, c) *increasing of the rent*, and d) decreasing of services.

This Notice provided by management (Defendants) was *secure to the element of an eviction action or the threat of it.* The Tenant (Plaintiff) actions here is now focus upon this *element* of the law. *The Law Citing: If you are renting property and you become disabled then your landlord has to make provisions for your disability.* **And the Records will too show!** *an increase of the Rent Annually,* which Too ~ is given as a retaliatory actions. Especially where the income of the Tenant would be limited to Government Payments, which now are controlled income. Where income is controlled due to a disability, any rule and or policy by the Landlord *to increase the Rent here,* is seen as a violation of the Law. And Rightfully So!

The fear of losing his home and the loss of enjoyment, given to him of this dwelling unit A-11, via the inactions and conduct of management to violate of his rights, has place an emotional distress [ mental anguish][9] upon him. Where too relief can be held before the Law. **_Has not this Plaintiff suffer enough with the lose of his limbs._** For five years the Tenant

Pg 7

has suffer the violations of his Rights by the Defendants, while knowing that this action in

---

[9].N.D.Tex 2000 Plaintiff in Section 1983 action who has established liability of defendants is entitled to recovery compensatory damages for physical injury, pain and suffering, and mental anguish that he has suffered in the past – and is reasonably likely to suffer in the future – to extend they are proximately caused by the defendants' wrongful conduct. 42 U.S.C.A. section 1983. – Lawson v. Dallas County, 112 F.Supp.2d 616

stopping his eviction will duly be before him at every corner of his life, while still living here at The Cloisters in the future. Yet this harm[10] directed upon him at the hands of the Defendants must be address in a Court of law.

The Landlord (Defendants) actions according to their 'Notice,' is held to the Tenant (Plaintiff) Breach of Contract, yet the analysis made here forth has reveal that the Defendants inactions to provide the safety net held to law; to secure the enjoyment of life due him (duty of care); was designed to remove and deprive the Rights governing his disability; *which to this filing has not been adjusted upon its rules, and policies underlining this harm to the Plaintiff. Still a continuos practice and procedure upon the Plaintiff since Nov. 2003, where the Disability Aware Notice from the government (copy), provide to the Defendants ~ exist..*

It is the Plaintiff belief that the actions given to the conduct of management, has its foundation upon no legal boundaries of the law[11]; except for his standing as being classed upon a defined group of people ~ they being Disable. Unto his disability he has a defined protection of the law, upon which management fail to address, but continue* to apply its procedural rules and policies upon the Rental Agreement of the Tenant, knowing of the violations governing the Tenant Federal Rights ~ By Now.

**Pg 8**

---

[10]. Cal.App. 1 Dist. 2001 A defendant's conduct may be a substantial factor in bringing about an injury if it has created a force or series of forces which are in continuous and active operation up to the time of the harm. – Bonanno v. Central contra Costa Transit Authority, 107 Cal.Rptr.2d 916

[11]. Cal.App. 2 Dist. 2000 At some point, a failure to follow the law, or the continued application of an arbitrary and irrational standard, will rise to the level of a substantive due process violation. U.S.C.A. Const.Amend. 14. – In re Rosenkrantz, 95 Cal.Rptr.2d 279, 80 Cal.App.4th 409.

## RESPONSE TO RULE 12(b) DEFENSES

### CASE HISTORY OF LEGAL CITING'S

Compliant is sufficient to withstand motion to dismiss for failing to state claim upon which relief can be granted where it sets out generalized statement of fact from which defendant may frame responsive pleading. *Wooldrige Homes, Inc.  V Bronze Tree, Inc. (1983, DC Colo) 558 F supp 1085, CCH Fed Secur L Rep 99167*

Under Rule 12(b)(6), the allegations of the complaint are accepted as true, and all reasonable inferences are draw in the light most favorable to the plaintiff, and dismissal is appropriate only if it appears that plaintiff would prove no set of facts that would entitle her to relief. *Brown v.  Philip Morris inc., 250 f.3d 789, 796 (ed cir. 2001)*

*The citing hereto are holding upon the factorial support of the Plaintiff Complaint... vesting, those inaction's and conduct's of the Defendants, in the face of its violation upon the Disable.*

**WHERE FORTH**  Plaintiff deprived of a right secure by the Constitution and Laws, under 42 U.S.C.A. Section 1983, may impose a suit for liability, for violations of rights protected by the Federal Constitution;   And,

**WHERE FORTH**  Plaintiff suit under 42 U.S.C.A. Section 1986 enjoin the Defendants to a civil cause of actions for damages,  injuries brought upon the Plaintiff by actionable negligence inferred from circumstances to prevent or aid in preventing the commission of the wrongs conspired to be done, as mentioned to the Plaintiff cause of action;     And

**WHERE FORTH**  Plaintiff suit under 42 U.S.C.A. Section 1985 render unto him nominal, compensatory, and punitive damages [ Hobson v. Wilson 735 F. 2d 1 (DC Cir. 1984) ];     And

**WHERE FORTH**  Plaintiff under 42 U.S.C.A. Section 3604 enjoin the Defendants to a civil cause of action for damages, injuries brought upon the Plaintiff; as made applicable by Section 3604, it

**Pg 9**

shall be unlawful – (f)(3)(B) A refusal to make reasonable accommodation in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling. The Defendants have duly demonstrated this, fact securing this matter sufficiently upon the Defendants together..

It is clearly establish! that had the request for 'Reasonable Accommodation' been provided by the Defendants, as requested unto the Plaintiff February 22nd, 2007 response; this filing now before the Court, would not be placed to its Federal Docket; but for the violation of the Statue as held to the Defendants conduct,[12] the Plaintiff would have no 'cause of action' upon this Court. The framing of the **_Civil Rights Act of 1968_** has seeded unto the court, the directions[13] upon Defendants whom are held as one's being given to its failure,[14] to protect the rights of the Disable.

## CASE HISTORY SUMMARY

### United States v. ADI Management, Inc. et. al. (E.D.N.Y.)

The Government issued a determination of Reasonable Cause and Charge of Discrimination **upon** the Defendants, with engaging in discriminatory housing practices, in violation of the Fair Housing Act. Defendants, through their actions refused to make a reasonable accommodation in their rules, policies, practices or services, when such an accommodation was necessary to afford the tenant equal opportunity to use and enjoy a dwelling in

### Pg 10

violation of 42 U.S.C. 3604(f). As a result of Defendants' conduct the tenant suffered

---

[12]. C.A.5(la.) 2000. If plaintiff can show he probably would not have suffered the injuries complained of but for defendant's conduct, he has met his burden of proof for cause-in-fact in establishing negligence claim under Louisiana Law. – F.D.I.C. v. Barton, 233 F.3d 859.

[13].W.Va. 1999  A violation of a statute is prima facie evidence of negligent. – Shaffer v. Acme Limestone Co., Inc. 524 S.E.2d 688. When a statute imposes a duty on a person for the protection of others it is a public safety statute and a violation of such a statute is prima facie evidence of negligence unless the statute says otherwise. – Id.

[14]. N.C.App. 1996 Breach of duty required for actionable negligence may be by negligent act or by negligent failure to act. – Tise v. Yates Const. Co., Inc., 471 S.E.2d 102, 122 N.C.App. 582, review allowed 473 S.E.2d 628, 343 N.C. 758, affirmed as modified and remanded 480 S.E. 2d 677, 345 N.C. 456

damages, that the defendants' discriminatory actions were intentional, willful and taken in disregard of the tenant rights. Thereto the Government declares that defendants' discriminatory housing practices, violates the Fair Housing Act, as amended, 42 U.S.C. ss 3601 - 3619. That awards for damages are will fully compensated for injuries caused by defendants' discriminatory conduct, pursuant to 42 U.S.C. ss 3612(o)(3), 36139 ( c )(1), and award punitive damages to the tenant pursuant to 42 U.S.C. ss 3612(o)(3), 3613( c ) (1).

## PLAINTIFF RESPONSE TO DEFENDANT'S ANSWER'S

1. Having establish 'Original Jurisdiction' thereto titles 28 USC s 1331, unto this jurisdiction, the appellate circuit held in *Ivy Broadcasting Co., Inc. v. American Tel. & Tel. Co.*, 391 F.2d 486, Laws in 28 USC section 1331 should be construed to include laws created by federal judicial decisions as well as by congressional legislation. This decision encumbrance federal courts, in reviewing pleadings

pursuant to 28 USC section 1331, to provide due process by affording litigant claim be examined within the context of the whole jurisdictional scheme: fully reviewing decisions rendered by another appellate circuit, upon issues based on statues, pleaded facts and evidentiary facts, as well as, judicial review of the statutory language and intent of a congressional enactment.

2. Unto this civil Action, where there is an alleged violation of federal statutes, the federal courts are require to comb judicial precedent of other circuit's, when it has no reference resources within its own appellate circuit. To preclude a party from presenting the merits of a complaint cause of action to trial court, unto this matter; the court of Appeals Ill. Circuit held in: Glass v. Pitler, 212 Ill. Dec. 730, 657 N.E. 2d 1075 (1995): Where Court of Appeals within given circuit, and United States Supreme Court, are silent on particular issue, District Courts within the circuit should defer to consistent precedents in other Courts of Appeal.

**Pg 11**

## HOLDING TO THE "RESPONSE TO ANSWER'S" RULINGS...
## THE CLAIMS FOR RELIEF HAS ITS AUTHORITY.

**Where Forth   Defendants bring specific denial thereto sentences 18 through 21 against complaint, it is actionable upon them to bear burden to identify applicability implied from its hands.     Held Unto:** _Conn.App. 1994_   In civil case, proof of material fact by inference from circumstantial evidence need not be so conclusive as to exclude every other hypothesis; it is sufficient if evidence produces in mind of trier of fact reasonable belief and probability of existence of material fact. – Connecticut Bank and Trust co., N.A. v. Reckert, 638 A.2d 44, 33 Conn.App. 702... _N.M. 1993_. "Material" evidence is evidence that relates to matter in dispute or has reasonable bearing on issue to be decided in given case. – Matter of Arbitration Between Town of Silver City and Silver City Police Officers Ass'n, 857 P.2d 28, 115 N.M. 628. **Complaint having original jurisdiction invokes upon the courts, litigant rights to pursue a point of law.  Supreme Court decision in Haines v. Kerner is based on said grounds.**

**Where Forth     Defendants bring specific denial thereto sentences 22 through 24 against complaint, it is actionable upon them to bear burden to identify applicability implied from its hands.      Held Unto:**   A conscious failure to exercise due care constitutes "willfulness, " for purpose

of awarding punitive damages.  Welch v. Esptein, 536 S.E. 2d 408, 342 S.C. 279.  _La.App. 5 Cir. 2001_ When multiple causes of injury are present, a defendant's conduct is a cause in fact if it is a

substantial factor generating plaintiff's harm. Abadie v. Metropolitan Life Ins. Co., 784 So.2d 46,

00-344 (La.app. 5 Cir. 3/28/01), rehearing denied.. **Complaint having original jurisdiction invokes upon the courts, litigant rights to pursue a point of law.  Supreme court decision in**

**Haines v.Kerner is based on said grounds.**

**Where Forth    Defendants bring specific denial thereto sentences 25 through 27 against complaint, it is actionable upon them to bear burden to identify applicability implied from its hands.    Held Unto:** _La.App. 2 Cir. 2001_  Although violation of a statute constitutes negligence per se, to be actionable, such negligence must be the legal cause of the accident. – King v. Danna, 784 So.2d 757, 34.397 (La.App. 2 cir. 40/04/01).  Where a defendant's negligence is a concurring cause,[15] the law regards it as a legal cause regardless of the extent to which it contributes to that injury.– Bonanno v. Central Contra Costa Transit Authority, 107 Cal. Rptr.2d _916_. _S.C.App. 2000_ To sustain an action for negligence, the plaintiff must demonstrate that the defendant breached a duty of care he or she owed to the plaintiff. – Howard v. South Carolina Dept. Of Highways, 538 S.E.2d 291, rehearing with drawn. **Complaint having original jurisdiction invokes upon the courts, litigant rights to pursue a point of law. The Supreme Court decision in Haines v. Kerner is based on said grounds.**

**Where Forth    Defendants bring specific denial thereto sentences 28 through 30 against complaint, it is actionable upon them to bear burden to identify applicability implied from its hands.    Held Unto:** _N.D.N.Y. 2000_  In the Second Circuit, personal involvement of defendants in the alleged constitutional deprivation is a prerequisite to an award of damages under 1983.  42 U.S.C.A. s1983. – Rivers v. O'Brien, 83 F.Supp.2d 328.  C.A.9 (Or.) 2000  To succeed on a s1983

Pg 13

equal protection claim, the plaintiffs must prove that the defendants acted in a discriminatory

---

[15]. Concurrent negligence.  Arises where the same injury is proximately caused by the concurrent wrongful acts or omissions of two or more persons acting independently.

manner[16]

and that the discrimination was intentional. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. s1983. – Reese v. Jefferson School Dist. No. 14J, 208 F.3d 736 **Complaint having original jurisdiction invokes upon the courts, litigant rights to pursue a point of law. The Supreme Court decision in Haines v. Kerner is based on said grounds**

**Where Forth    Defendants bring specific denial thereto sentences 31 through 32 against complaint, it is actionable upon them to bear burden to identify applicability implied from its hands.    Held Unto:** _C.A.11 1997_  Actual damages awarded under the Fair Housing Act (FHA) are compensation for the victim's injury and not punishment for the perpetrator's wrongdoing: punitive damages are available if case is tried in district court but, when case is tried in administration hearing, punitive damages are unavailable, although civil penalty may be assessed. Fair Housing Act, s 812(g)(3), as amended, 42 U.S.C.A. s 3612(g)(3). – Banai v. Secretary, U.S. Dept of Housing and Urban Development on Behalf of times, 102 F.3d 1203  _C.A.2(Conn.) 1997._ Jury may be permitted to award punitive damages in s 1983 action when it finds that the defendant's violation of federal law was intentional or when defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to federally protected rights of others.  42 U.S.C.A.s1983.  McCardle v. Haddad, 131 F.3d 43.  A complaint will be deemed to satisfy the required amount in controversy unless defendant can show to a legal certainty that plaintiff

**Pg 14**

---

[16]. Title VIII of the Civil Rights Act of 1968 ( Fair Housing Act of 1968 ) provides: For the administration of all Federal programs and activities relating to housing and urban development in a manner affirmatively to further fair housing through the United States. Published in the United States code at 42 U.S.C. ss 3601 - ss 3639... Further it is noted ~ s 3602 - Definitions (f): " Discriminatory Housing Practice " means an act that is unlawful under section 3604, 3605, 3606 or 3617 of this Title.

cannot recover the amount. [ In Re LifeUSA Holding inc., 242 F. 3d 136 ] Punitive damages for violations of federal law are available where a civil rights defendant's conduct is motivated by evil motive or intent, or when it involves reckless o r callous indifference to federally protected rights of others. – Samaritan Inns, Inc. v. District of

Columbia, 114 F.3d 1227, 325 U.S. App.D.C. 19, rehearing denied. **Complaint having original jurisdiction invokes upon the courts, litigant rights to pursue a point of Law. The Supreme Court decision in Haines v. Kerner is based on said grounds.**

**Where evidence is a material fax document, the law Notes:   Fax Documents ~ The foundation requirements for documents transmitted by facsimile machine are: 1) The fax machine is standard type equipment used to transmit documents by telephone. 2) The fax machine was in good working order at the time in question. 3) There are customary procedures for sending and receiving documents, and the procedures were followed at the time in question, 4) There is an automatic process for recording of time, date and telephone number of the sending machine, and this information appears on the document in question. 5) the document offered as evidence was received on the addressee's fax machine. <u>People v. Hagan, 145 Ill.2d 287 (1991); United States v.</u> Galiczynski, 44 F.Supp.2d 707, 714 (E.D. Pa.) ~ Affirmed presumption of receipt base on evidence in the form of telephone bills or fax transmission records.**

**Held to the above here mentioned... _Response_, allow pages 1 through 15 to establish:**

**Pg 15**

*Defendants[17] are without sufficient information or belief of law, to PROOF [18] its defenses. ... a) "Complaint [19] states a claim upon which relief may be granted.;      b) "Affirmative Defenses! fails to proof claims ~ one [1] through 4 [four] unto the Complaint Allegations.*

In Final Analysis: It was not the *habits of the Plaintiff* where the violation of law is placed, but it is fully review upon the *habits of the Defendants*. See Attachment  G - Material Evidence ~ HUD[20] Letter ... Letter of Determination ~ Charge of Discrimination unto the records.

**Unto this habit: Tenant's  Rights: Rent Increases ~ If you are 62 years old or disabled, the law  provides you with extra protections against a rent increase if you live
in a building or complex which  has at lease five dwelling units or you live
in a mobile park, AND  you are blind  or physically  disabled, etc.
Supreme Court   [ see  Attachment H... Rental Increase and rental payments ] *Debt due*

For  all  of  the  foregoing  reasons,  Defendant's [21]  Contribution  Negligence  Defense place to the color of statute  under 42 U.S.C. ss 3604(f)(3)(B) should be dismiss.

**Pg 16**

---

[17]. A plaintiff may prove a business' conduct with habit evidence alone; direct evidence is not necessarily required under Louisiana law. – Mobil Exploration and Producing U.S., Inc. v. Cajun Const. Services, Inc. 45 F.3d 96.

[18]. N.J. Super.A.D. 2000  Those who seek  to deprive  an individual of a fundamental right must meet a clear and convincing burden of proof. – In re absentee Ballots Cast by Five Resident of Trenton Psychiatric Hosp., 750 A.2d 790, 331 N.J. Super. 31

[19]. Due process clause provides for recovery when actions violating plaintiff's constitution rights are egregious that their egregious nature shocks conscience. U.S.C.A. Const.Amend. 14 – Milstead v. Kibler,91 F.Supp.2d 895

[20]. Fed.Cl. 2000  Government  officials  are presumed to act in good faith. – Northrop Grumman Corp. v. U.S., 46 Fed.Cl. 622

[21]. When affirmative  defense is raised in civil case,  defendant normally has burden of proving it. Cavanaugh v. Skil Corp., 751 A.2d 564, 331 N.J. Super. 134.

Finally: C.A.9 (Or.) 2000  To succeed on a s 1983 equal protection claim, the plaintiffs must

prove that the defendants acted in a discriminatory manner and that the discrimination was

intentional. U.S.C.A. Const. Amend. 14; 42 U.S.C.A. s1983. – Reese v. Jefferson School Dist.

No. 14J, 208 F.3d 736.    [ *Again See the Attached ~ Letter of Determination with HUD* ...
Defendant ' Trinity LP ' is charge of DISCRIMINATION [22]  |

[Complaint [23] Definitions... unto this document submitted before the court, and the use of
the text '*Horning Brother Management*' is duly held to the entity as ~ *Horning Brothers
Corporation* [24]; the use of text <u>The Cloisters</u> is duly held to the entity as ~ *Trinity LP.*] [25]

**Respectfully Submitted**.

Mr. Henry W. Geter II
Tenant/Plaintiff [26]                                            Sept. __04__, 2007

100 Mich. Ave. N.E.  Suite A-11
Washington DC   20017
202/986-2264

**Pg 17**

---

[22]. Proof of violation of a safety statute creates a prima facie case of negligence. Cooper v. Burnor, 750 A. 2d 974. *Further ...* A plaintiff is contributorily negligent **when he fails to use due care to protect himself** from risk of injury if the risk would have been apparent to prudent person exercising ordinary care for his own safety. Wolfe v. Wilmington Shipyard, Inc., 522 S.E. 2d 306.

[23]. Tenn. Ct. App. 2006  A motion to dismiss for failure to state a claim challenges only the legal sufficiency of the complaint; it does not challenge the strength of the plaintiff's proof. Rules Civ. Proc., Rule 12.02(6). Barnes & Robinson Co., Inc. v. One South Facility Services, inc., 195 S.W. 3d 637.

[24]. C.A. 9 (Cal.) 2001 A corporation and its officers may be held liable for compensatory damages for their failure to ensure the corporation's compliance with the Fair Housing Act (FHA), whether or not the officers directed or authorized the particular discriminatory acts that occurred. Civil Rights Act of 1986, ss 801 - 812, as amended, 42 U.S.C.A. ss ss 36-1 - 3612. Holley v. crank, 258 F.3d 1127.

[25]. In order for an entity to be liable for violation of a federal constitutional or statutory right under ss 1983, entity's policy or custom must have played part in the violation. 42 USCA ss 1983. American Civil Liberties Union of Kentucky v. McCreary County, Ky, 96 F.Supp. 2d 679

[26]. Arguments of counsel are not evidence. Flentje v. First Nat. Bank of Wynne, 11 S.W 3d 531, 340 Ark. 563

## CERTIFICATE OF SERVICE

I    Henry W. Geter II    HEREBY CERTIFY on this _____4 th_____ day of ___Sept.___,
2007, that a copy of the foregoing MEMORANDUM was mailed to the Defendants:

>        Horning Brothers Corporation
>        Trinity LP
>        Ms. Veda S. Brinkley
>        Ms. Connie Fletcher

***VIA ITS ASSIGNED ATTORNEYS***:  Schuman & Felts, CHTD, 4804 Moorland Lane Bethesda,
MD 20814, Attn: Phillip L. Felts, Esquire, by first-class mail. *[Noting: Entry of Appearance ~ not
received until June 26 th, 2007.] FOR THE DEFENDANTS* ~ Horning Brothers Corporation and
Trinity LP.

***VIA ITS ASSIGNED ATTORNEYS***:  David P. Durbin, Esquire, 1000 Conn. Ave. N.W. Suite 600,
Washington D.C. 20036, by  first-class mail ***FOR THE DEFENDANTS*** ~ Ms. V.S. Brinkley and
Ms. Connie Fletcher.

_____
Henry W. Geter II
100 Mich. Ave. N.E. Suite A-11
Washington DC 20017



) CONNECTICUT AVENUE NW, SUITE 800

**HORNING BROTHERS** ✓

**ORIGINAL**

WASHINGTON, DC 20036    202-659-0700

**FILE COPY**

RECEIVED
DATE: _Feb 16th 07_
BY: _Henry W Geter II_

February 16, 2007

Henry Geter II
100 Michigan Ave. NE
Apt. #A11
Washington, DC 20017

### NOTICE TO CURE VIOLATION OF TENANCY OR VACATE

In accordance with the District of Columbia Rental Housing Act of 1985, D.C. Law 45 D.C. Section 2551(b) (1986) you are hereby given notice that you are violating the terms and conditions of your tenancy/lease in the following manner:

**By continually and habitually paying your rent late. According to your lease, the rent is due and payable on or before the first day of the rental period without notice or demand for the same.**

You are hereby given notice to cure this violation. Please be advised that this violation may be cured as follow:

**By paying the full amount of the rent due on or before the first day of the rental period commencing immediately after the expiration of this notice and every rental period thereafter. This notice will expire 30 days from the beginning of the next rental period after you received this notice. This notice will expire on March 31, 2007**

You must either correct the violation as provided herein or vacate the premises on or before the day after this notice expires. If you fail to correct this violation or vacate the premises, Horning Brothers Management will initiate an action for possession in the Landlord and Tenant Branch of the Superior Court of the District of Columbia. You will be required to pay rent and all outstanding charges during the period of your occupancy.

Finally, a copy of this Notice will be filed with the local HUD office and to the Rent Administrator, Department of Consumer and Regulatory Affairs, Rental Accommodations and Conversion Division, at 614 H Street, N.W. Room 423, Washington, D.C. 20001.

Sincerely,

Veda S. Binkley
Assistant Property Manager

Registration Number:
Exemption

Number:

95943

_ATTACHMENT A ...    MATERIAL EVIDENCE_

Mrs. Veda S Brinkley:

<u>**Record  Log  50000**</u>

This *__Accounting Notice__* is reviewed to the Payment of  Record... And! Is given to! the receivership of the *TENANT OFFICIAL RESPONSE* dated February 22nd 20007 upon which was faxed to the following number ... 12026599489 @ Horning Brothers to Mrs. Veda S. Brinkey , where to a copy was place to the Cloisters ... 12029861215.

<u>*ACCOUNT NOTICE*</u>... HW Geter II
    Tenant A-11 Cloisters

<u>*OFFICIAL LOG RECORDS OF PAYMENTS*</u>
  *Held to Tenant Log Records ... Xerox Copies*

<u>*The following Payments have been received ... Starting After October 6, 2003*</u>

**FILE COPY**

| *Mo/Yr  03 - 07* | | *Payment Amounts* | *Adjustments Due* | | *Amounts Due* | |
|---|---|---|---|---|---|---|
| November | 03 | 50754...$1325.00 | ... - | $890.00 | ... - | $435.00 |
| December | 03 | 50755...$1375.00 | ... - | $890.00 | ... - | $485.00 |
| January | 04 | 50756...$1375.00 | ... - | $890.00 | ... - | $485.00 |
| February | 04 | 50757...$1405.00 | ... - | $890.00 | ... - | $515.00 |
| March | 04 | 50758...$1325.00 | ... - | $890.00 | ... - | $435.00 |
| April | 04 | 50759...$1352.00 | ... - | $890.00 | ... - | $462.00 |
| May | 04 | 50760...$1377.00 | ... - | $890.00 | ... - | $487.00 |
| June | 04 | 50761...$1422.00 | ... - | $890.00 | ... - | $532.00 |
| July | 04 | 50762...$1412.00 | ... - | $890.00 | ... - | $522.00 |
| August | 04 | 50763...$1383.00 | ... - | $890.00 | ... - | $493.00 |
| September | 04 | 50764...$1367.00 | ... - | $890.00 | ... - | $477.00 |
| October | 04 | 50765...$1367.00 | ... - | $890.00 | ... - | $477.00 |
| November | 04 | 50766...$1432.00 | ... - | $890.00 | ... - | $542.00 |
| December | 04 | 50767...$1504.00 | ... - | $890.00 | ... - | $614.00 |
| January | 05 | 50768...$1432.00 | ... - | $890.00 | ... - | $542.00 |
| February | 05 | 50769...$1432.00 | ... - | $890.00 | ... - | $542.00 |
| March | 05 | 50770...$1352.00 | .. - | $890.00 | ... - | $462.00 |
| April | 05 | 50771...$1550.00 | ... - | $890.00 | ... - | $660.00 |
| May | 05 | 50772...$1420.00 | ... - | $890.00 | ... - | $530.00 |
| June | 05 | 50773...$1615.00 | ... - | $890.00 | ... - | $725.00 |
| July | 05 | 50774...$1673.00 | ... - | $890.00 | ... - | $783.00 |
| August | 05 | 50775...$1366.37 | ... - | $890.00 | ... - | $476.37 |
| September | 05 | 50776...$1393.00 | ... - | $890.00 | ... - | $503.00 |
| October | 05 | 50777...$1393.00 | ... - | $890.00 | ... - | $503.00 |
| November | 05 | 50778...$1393.00 | ... - | $890.00 | ... - | $503.00 |
| December | 05 | 50779...$1393.00 | ... - | $890.00 | ... - | $503.00 |

pg 1

<u>*ATTACHMENT B..*</u>   *MATERIAL EVIDENCE*

| Mo/Yr 03 - 07 | | Payment Amounts | Adjustments Due | | | Amounts Due | | |
|---|---|---|---|---|---|---|---|---|
| January | 06 | 50780 ... $1453.00 | ... | - | $890.00 | ... | - | $563.00 |
| February | 06 | 50781 ... $1453.00 | ... | - | $890.00 | ... | - | $563.00 |
| March | 06 | 50782 ... $1318.00 | ... | - | $890.00 | ... | - | $428.00 |
| April | 06 | 50873 ... $1500.00 | ... | - | $890.00 | ... | - | $610.00 |
| May | 06 | 50874 ... $1500.00 | ... | - | $890.00 | ... | - | $610.00 |
| June | 06 | 50875 ... $1420.00 | ... | - | $890.00 | ... | - | $530.00 |
| July | 06 | 50876 ... $1479.00 | .. | - | $890.00 | ... | - | $589.00 |
| August | 06 | 50877 ... $1500.00 | ... | - | $890.00 | ... | - | $610.00 |
| September | 06 | 50878 ... $1495.00 | .. | - | $890.00 | ... | - | $605.00 |
| October | 06 | 50879 ... $1505.00 | ... | - | $890.00 | ... | - | $615.00 |
| November | 06 | 50880 ... $1500.00 | ... | - | $890.00 | ... | - | $610.00 |
| December | 06 | 50881 ... $1530.00 | ... | - | $890.00 | ... | - | $640.00 |
| January | 07 | 50882 ... $1500.00 | ... | - | $890.00 | ... | - | $610.00 |
| February | 07 | 50883 ... $1530.00 | ... | - | $890.00 | ... | - | $640.00 |

**Total Due Amount:**

**$21,916.37**

Allow this Fax... to establish my intention to go before the Courts to restore (make whole) to me, the Disability Payments removed ... via the inactions of Management of the Cloisters [Horning Brothers], to make "Reasonable Accommodations" given to my <u>D</u>isable as per the law ~ Disability Rights in Housing... duly states. It is my hope that the <u>*Total Due Amount*</u>, would be acknowledge and appropriate actions taken to address this fault of management unto a open manner [ <u>*having no need for court actions*</u> ].

Mr. HW Geter II

**February 28th 2007**

<u>**P.S. Only personal from the 'Rent Administrator Office' will be given access to bring into review... the authenticity of the payment records.**</u>

cc - Rent Administrator RADC
    Cloisters - Management

pg 2

| FACT FINDING CONFERENCE |  |

The Fact Finding Conference is an administrative procedure designed to facilitate the collection of facts in an investigation. It is an administrative proceeding, not a judicial proceeding.

This is the preliminary stage of the investigation to clarify issues in the complaint and to obtain statements from the Complainant, Respondent(s) and/or other witnesses. Upon completion of the Fact Finding Conference the investigation will continue and parties will have an opportunity to provide additional information until the investigation is closed. The anticipated time-frame for the conference is two-three hours.

The Fact Finding Conference is scheduled as follows:

**TIME: 2 PM**
**DATE: MAY 2, 2007**
**ADDRESS: 441 4TH ST NW**
**CONFERENCE ROOM: 1116**

You may not send a substitute for yourself or bring persons not requested to attend without first obtaining permission from the investigator. If you fail to attend, the conference will proceed with the other party. You are also required to submit a summary of your position statement and respond to the enclosed Request for Information.

If you have any witnesses on your behalf, please send all current contact information for each witness including his/her address and telephone number, as well as what s/he could attest. All affidavits you submit to the Office from persons who have first-hand knowledge of matters relating to your allegations **must be SIGNED, SWORN and NOTARIZED**.

You are required to respond to our office no later than April 13, 2007. All responses must be received prior to the scheduled Fact Finding Conference. Should you need to reach our office for further information on this matter, please contact me at (202) 645-5632.

| **Please send requested information to my attention at the following address:** |

**THE OFFICE OF HUMAN RIGHTS**
**3220 PENNSYLVANIA AVENUE**
**WASHINGTON, D.C. 20020**

RECEIVED
DATE: March 3 07
BY:

GOVERNMENT OF THE DISTRICT OF COLUMBIA
Office of Human Rights

ATTACHMENT G



| | |
|---|---|
| **Judiciary Square Office** | **Penn Branch Office** |
| 441 4th Street, NW, Suite 570N | 3220 Pennsylvania Avenue, SE, 1st Fl. |
| Washington, DC 20001 | Washington, DC 20020 |
| Phone: (202) 727-4559 Fax: (202) 727-9589 | Phone: (202) 727-4559 Fax: (202) 645-6390 |

## LETTER OF DETERMINATION



*Via Certified/First Class Mail*

June 18, 2007

Henry W. Geter II
100 Michigan Avenue, # A-11
Washington, DC 20017

Re:   ***Henry Geter v. Trinity Community LP, et al***
      OHR CASE NUMBER:        07-176-H
      HUD CASE NUMBER:        03-07-0283-8

Dear Mr. Geter:

The Office of Human Rights (hereinafter "OHR") has completed its investigation of the above captioned complaint. Henry Geter is referred to as **"COMPLAINANT."** Trinity Community LP is referred to as **"RESPONDENT ONE."** Veda S. Brinkley is referred to as **"RESPONDENT TWO."** Connie Fletcher is referred to as **"RESPONDENT THREE"**. Complainant's charge presented the following issues, which were investigated by the OHR:[1]

## ISSUES PRESENTED

Whether Respondent subjected Complainant to discrimination on the basis of his disability (diabetes, amputated feet) when Respondent delayed or denied granting Complainant's reasonable accommodation request of changing Complainant's rental payment due date to the 15th , rather than the 1st of the month.

## JURISDICTION

The Office of Human Rights ("OHR") has jurisdiction over complaints of discrimination filed within one year of the occurrence of an alleged discriminatory act that took place in the District of Columbia, or within one year of discovering the occurrence of such act. 4 DCMR § 702.1(a). Complainant was a tenant at 100 Michigan Ave., # A-11, Washington, DC 20017, at the time of

---

[1] Veda Brinkley and Connie Fletcher are administratively dismissed as Respondents, as they are employees of Respondent One and come under the auspices of *Respondeat* Superior/Vicarious Liability. Moreover, Respondent One is responsible for the actions of its employees.

the alleged violation. Complainant filed this complaint with the OHR alleging that Respondent discriminated against him as detailed above, in violation of Section 804(f)(3)(B) of Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 ("FHAA?") and in violation of Section 2-1402.21 (d)(3)(B) of the District of Columbia Human Rights Act ("DCHRA"), as amended.

Respondent One is the owner of the multi-family housing unit in the District of Columbia. Respondent Two and Three are employees of the property management company which provides management services for Respondent One. Respondents have sufficient minimal contacts within the District of Columbia, therefore, the OHR has jurisdiction over Respondents.

## FINDINGS OF FACT

The OHR's findings of fact were obtained from the following: (a) Complainants' sworn statement and rebuttal; (b) Respondents' sworn statement; and (c) Respondents' responses to Interrogatories and Requests for Documents and (d) OHR's fact finding conference. Based on its investigation, the OHR makes the following findings of fact:

The Cloisters is a multi-family apartment building with 352 units. Respondent One is the owner of the apartment building. Respondents Two and Three are employees for the management company that operates the facility. The facility is located at 100 Michigan Ave., Washington, DC 20017.

Complainant filed a complaint with the U.S. Department of Housing and Urban Development on March 15, 2007 alleging he was discriminated against by the Respondent based on disability (diabetes and amputated feet) when Respondent failed to grant Complainant's reasonable accommodation and allow him to pay his rent on the 15th, rather than the first of every month.

The OHR record contains Complainant's Notice of Award for his disability from the Social Security Administration effective May 30, 2003. The award denotes Complainant's payment will be issued on or about the second Wednesday of each month.

Complainant's monthly rental payment is $1418.00. Complainant received three (3) delinquent rental notices for the month of March 2007: March 6, 2007 for a balance due of $1,433.00; March 11, 2007 for $1448.00; and March 16, 2007 for $1,468.00. Complainant was charged three (3) late fees during March 2007. Complainant submitted a rental payment to the Cloisters Apartment in the amount of $1,510.00 on March 23, 2007. Complainant consistently paid his rent between the 16th and 18th of every month.

The OHR record contains a Notice to Cure Violation of Tenancy or Vacate issued to Complainant by Respondent One's property management company on February 16, 2007. The notice states:

> *"By Continually and habitually paying your rent late. According to your lease, the rent is due and payable on or before the first day of the rental period without notice or demand for the same."*

The DCHRA and FHAA provide that it is unlawful for any person to refuse to make a reasonable accommodation in the rules, policies, practices, or services, when such accommodation may be necessary to afford such person equal opportunity to use and enjoy a dwelling unit including public use and common areas.

## Complainant's Allegations

Complainant alleges that he is disabled within the meaning of the FHA and the DCHRA. Complainant contends that he has diabetes, and mobility issues, specifically that his feet were amputated. Complainant alleges he was unable to work, and began receiving disability payments from Social Security. Complainant states he receives his disability payments once a month on the second Wednesday of the month. Complainant alleges that on or about October 20, 2003, he provided written medical documentation including a letter to Respondent's property management employee requesting a reasonable accommodation adjusting the due date of his rent based on when he receives his disability check so that he would not have to pay late charges every month.

Complainant asserts Respondents never provided Complainant with his reasonable accommodation request. Instead, Complainant states he continued to pay his rent late as he incurred a late fee every month. Complainant alleges there were no problems between he and Respondents until about November 2006 when he went to the rental office to pay his rent. Complainant claims Respondent's Accounting Clerk suggested to Complainant that he consider signing his Social Security check over to Respondents. Complainant states he refused to sign over the check to Respondents.

Complainant alleges that on or about February 17, 2007 he received a Notice to Cure from the Respondent One's Assistant Property Manager, advising him that Respondents would no longer accept late rent payments from Complainant.

Complainant alleges that on or about February 22, 2007 he sent a second request for a reasonable accommodation to Respondent's property manager mirroring the request made in 2003. Complainant asserts Respondents have not answered his latest request.

Complainant believes that Respondents are treating him differently with respect to terms and conditions or services and facilities based on his disability. Complainant believes that Respondents are forcing him out of his unit because of his disability. Complainant believes that Respondents failed to reasonably accommodate him by permitting him to pay his rent in the middle of the month without penalty.

## Complainant's Documents

Complainant submitted a faxed reasonable accommodation request dated February 22, 2007 addressed to Respondent Ones' property manager.

The confirmation form indicates the telephone number where the fax was sent is (202) 986-1215. The OHR investigation confirms this is the correct fax number for Respondent's property management office.

## Respondent's Defenses

Respondents maintains they have never received Complainant's reasonable accommodation request, and have no obligation to accommodate Complainant's reasonable accommodation request, because the request would change their policies, and the accommodation is not related to his disability.

Respondents state that Complainant is afforded the same opportunity to pay the rent as everyone else, and given the same amount of grace days to pay his rent on time without incurring late charges. Respondents maintain that rent payments are a contractual matter, and are unrelated to Complainant's disability.

Respondents note that when Complainant moved in during March 2003, he received a one-month concession on his rent, something which was given to all tenants at this time. Respondents declare that because of this one month rent-free concession given to Complainant, Complaint should actually be two (2) weeks early on his rent, not two weeks late.

Respondents also provided a list of seven (7) different residents whom they have granted reasonable accommodations for in the past year. These accommodations ranged from handicapped parking signs, to removing carpet and widening doorways, to unit transfers for residents.

## Complainant's Rebuttal to Respondent's Defenses

Complainant notes that he faxed the request to Respondent on February 24, 2007, and submitted the fax, and the transmission verification report which indicated the fax was successfully transmitted.

Complainant notes that reasonable accommodation requests are normally specifically asking to change a standard policy or rule because of a disability, so it is a violation not to grant a reasonable accommodation request because Respondent's standard policies would be changed. Complainant also notes that he did not become disabled until nine (9) months after he moved into Respondent's building, and thus he had no foreknowledge during which he could have applied the one month's free rent which was offered to all of the tenants upon move-in.

Finally, Complainant states that there have been other cases in which a landlord's refusal to extend payment dates for disabled residents have resulted in liability for the landlord.

## Respondent's Policies

The OHR investigation revealed that Respondent has a standard lease, signed by Complainant in February 2003, which states that the rent is due on the first of the month, with a grace period

until the fifth (5th) of the month.

## OHR Interviews

Respondent Two was asked if she had received the fax requesting a reasonable accommodation from Complainant. Respondent Two denied ever receiving the fax, or any of her employees ever receiving a fax requesting an accommodation from Complainant. Respondent Two was asked if she had received a fax, would she have granted Complainant's request. Respondent Two indicated that even if they had received the request, the accommodation still would not have been granted, because Respondent did not feel it was related to Complainant's disability, and that she then would have to grant other residents request to do the same thing as Complainant.

## STANDARD OF REVIEW

In order for a Complainant to prevail in this forum, the OHR must find that the OHR's record contains credible, probative, and substantial evidence from which a reasonable person could conclude that the *prima facie* elements of discriminatory behavior are present, and that a legitimate, nondiscriminatory explanation for the behavior either does not exist or is pretext for unlawful discrimination. 4 DCMR § 715.1; 4 DCMR § 499.1.

## LEGAL ANALYSIS

Under the Fair Housing Act, as amended (FHAA), it is unlawful for a housing provider to refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling including the public use and common areas. 42 USC § 3604(f)(3)(B).

Discrimination may be proven either by direct evidence of discrimination, evidenced by the actions or words of the Respondent, or indirectly, following a burden-shifting analysis. The burden-shifting procedure initially established in *McDonnell Douglas Corp. v. Green* with respect to employment discrimination is applied to housing discrimination cases under the DCHRA and FHAA, as amended. *See, e.g., Neithamer v. Brenneman Property Services, Inc.*, 81 F. Supp. 2d 1, 3 (D.D.C. 1999); *Miller v. Poretsky*, et al., 595. F.2d 780, 791-792 (D.C. Cir. 1978) (concurring opinion); *United Mine Workers of Am. Int'l Union v. Moore*, 717 A.2d 332, 338 (D.C. 1998); *Atlantic Richfield Co. v. District of Columbia Comm'n on Human Rights*, 515 A.2d 1095, 1099 (D.C. 1986); *Hall v. Lowder Realty Co.*, 160 F.Supp.2d 1299, 1313-14 (M.D. Ala. 2001).

A plaintiff may prove discrimination under the FHAA by showing: (1) discriminatory effect, "disparate impact," (2) intentional discrimination, "disparate treatment," or (3) failure to provide reasonable accommodation. *T.K. v. Landmark West*, 802 A.2d 609, (N.J. 2001). Under the DCHRA, the same three-part test applicable to Title VII cases applies. *Atlantic Richfield Co. v. District of Columbia Comm'n on Human Rights*, 515 A.2d 1095, 1099 (D.C. 1986). The initial burden is on the Complainant to prove his *prima facie* case of discrimination. *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 361 (D.C. 1993); *see Texas Department of Community Affairs*

*v. Burdine*, 450 U.S. 248 (1981). If the Complainant satisfies his burden, he raises a rebuttable presumption that the Respondent's conduct is unlawful discrimination. *Arthur Young*, 631 A.2d at 361. After this rebuttable presumption is raised, the Respondent must then articulate "some legitimate, nondiscriminatory reason for the employment action." *Atlantic Richfield*, 515 A.2d at 1099 (citing *Burdine*, 450 U.S. at 254). The Respondent can "satisfy its burden by producing admissible evidence from which the trier of fact [can] rationally conclude that its action [was not] motivated by discriminatory animus." *Atlantic Richfield*, 515 A.2d at 1099-1100. The Respondent need not persuade the "[trier of fact] that it was actually motivated by the proffered reasons." *Burdine*, 450 U.S. at 254.

If the Respondent articulates a legitimate, nondiscriminatory reason for its action, "the burden shifts back to the Complainant to prove...that the Respondent's stated justification for its action 'was not its true reason but was in fact merely a pretext' to disguise discriminatory practice." *Arthur Young*, 631 A.2d at 361 (citation omitted). "This burden merges with the ultimate burden of persuasion on the question of intentional discrimination." *Atlantic Richfield*, 515 A.2d at 1100. "[A]lthough the *McDonnell Douglas* presumption shifts the burden of production to the defendant, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993)(quoting *Burdine*, 450 U.S. at 253).

Thus, once the Respondent satisfies its burden of producing a nondiscriminatory reason for its action, the Complainant must show "both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center*, 509 U.S. at 515 (emphasis in original). It is not enough for the Complainant simply to show that the Respondent's proffered reason for its action was pre-textual, although that will "often considerably assist him in doing so." *St. Mary's Honor Center*, 509 U.S. at 517; *see also Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). The Complainant must also prove "that the Respondent has unlawfully discriminated." *St. Mary's Honor Center*, 509 U.S. at 514. While pretext in the proffered reason for the action may, "in appropriate circumstances" justify an "inference" of discrimination, *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000), a Plaintiff is never relieved of the burden of proving "that the Respondent has unlawfully discriminated." *St. Mary's Honor Center*, 509 U.S. at 514. In fact, judgment as a matter of law would be appropriate for the Respondent (i) "...if the record conclusively revealed some other, nondiscriminatory reason for the Respondent's decision...," or (ii) the plaintiff's factual challenge to the Respondent's articulated reasons was "weak" and there was "abundant and uncontroverted" independent evidence that no discrimination had occurred. *Reeves* at 148.

## FAILURE TO ACCOMMODATE A DISABILITY UNDER THE FHAA AND THE DCHRA

To establish a reasonable accommodation defense under the Fair Housing Act, the tenant must demonstrate that (1) she suffered from a "handicap" (or "disability"), (2) the landlord knew or should have known of the disability, (3) an accommodation of the disability may be necessary to afford the tenant an equal opportunity to use and enjoy her apartment, (4) the tenant requested a reasonable accommodation, and (5) the landlord refused to grant a reasonable accommodation. *See ;United States v. California Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1380 (9th Cir.

1997); *Prindable v. Association of Apt. Owners of 2987 Kalakaua*, 304 F. Supp. 2d 1245, 1254 (D. Haw. 2003); *Adam v. Linn-Benton Hous. Auth.*, 147 F. Supp. 2d 1044, 1047 (D. Or. 2001); *Means v. City of Dayton*, 111 F. Supp. 2d 969, 977 (S.D. Ohio 2000); *In re Kenna Homes Coop. Corp.*, 210 W. Va. 380, 557 S.E.2d 787, 794 (W.Va. 2001).

The federal Fair Housing Act does not require that a dwelling be made available to an individual whose tenancy would constitute a direct threat to the health or safety of other individuals or whose tenancy would result in substantial physical damage to the property of others. 42 USC §§ 3604 (f)(9) (2001); DC Code §§ 2-1402.21 (2001) The Act's administrators, as well as the courts, have also ruled that an accommodation will not be reasonable, and thus will not be required, if it would impose an undue financial and administrative burden on the landlord or would fundamentally alter the nature of the landlord's operation. Joint Statement of the Department of Housing and Urban Development and the Department of Justice, Reasonable Accommodations under the Fair Housing Act (May 17, 2004).

Under the federal Fair Housing Act, unlawful discrimination occurs whenever a dwelling is denied to a renter because of that renter's disability. *Radecki v Joura*, 114 F3d 115 (8th Cir 1997). Under federal case law interpreting that provision, a discriminatory denial can occur at any time during the entire period before a tenant is "actually evicted;" actionable discrimination is not limited to the shorter cure period specified in a notice to cure or quit, or to any other period short of the eviction order itself. As a general rule, therefore, a "reasonable accommodation" defense is available at any time before a judgment of possession has been entered, if the other requirements of the defense are met.

Under the federal Fair Housing Act, a landlord is only obligated to provide a reasonable accommodation to a tenant if a request for the accommodation has been made. Joint Statement 11. A tenant who requests a reasonable accommodation, moreover, should make clear to the landlord that she is requesting an exception, change, or adjustment to a rule, policy, practice, or service because of her disability. *Id*. And she should explain what type of accommodation she is requesting. On the other hand, the Fair Housing Act does not require that a request be made in a particular manner.

Under the Act, a tenant's failure to make clear in her initial request what type of accommodation he or she is requesting is not fatal. According to applicable case law, including an administrative adjudication by the Department of Housing and Urban Development itself, once the tenant requests a "reasonable accommodation" (or, without using those exact words, requests an accommodation for a disability), the landlord is obliged under the Act to respond promptly. (See, Joint Statement, "landlord has an obligation to provide prompt responses to reasonable accommodation requests.") If the request is not sufficiently detailed to reveal the nature of that request, the Act - as properly interpreted - requires the landlord to "open a dialogue" with the tenant, eliciting more information as needed, to determine what specifics the tenant has in mind and whether such accommodation would, in fact, be reasonable under the circumstances. Any delay from the landlord's failure to respond promptly to the tenant's request may become the landlord's responsibility.

Until a landlord makes a good faith, reasonable effort for an accommodation, upon request, after learning of a tenant's mental impairment, the landlord's continued pursuit of a pending action for possession is a discriminatory act under the federal Fair Housing Act.

## THE INTERACTIVE PROCESS

Although neither statutory language in the Fair Housing Act nor its implementing regulations expressly require an "interactive process" for resolving requests for reasonable accommodations, several courts have indicated that the Act's statutory scheme inherently imposes such a requirement. *Jankowski v Lee and Associates, v Cisneros*, 91 F3d 891, 895 (7th Cir 1996) (if landlord is "skeptical of" tenant's alleged disability or landlord's ability to provide accommodation, "it is incumbent upon [] landlord to request documentation or open a dialogue"); *Jacobs v Concord Vill. Condo. X Assn*, 2004 US Dist LEXIS 4876, AT *5 (D. FL Feb 17, 2004); *Armant v Chat-Ro Co*, LLC, No 00-1402, 2000 US Dist LEXIS 11386, at *6 (ED La Aug 1, 2000); (quoting *Jankowski Lee & Assocs.* and further holding that once apprised of possible disability, landlord has duty to inquire or investigate further);*Auburn Wood I Homeowners Assn. v Fair Employment & Housing Comm.* (2004) 121 Cal. App. 4th 1578, 1598 [18 Cal Rptr 3d 669, 683] (quoting *Jankowski Lee & Assocs.* and further holding that obligation to "open a dialogue" with party requesting reasonable accommodation is part of interactive process in which each party seeks and shares information);*Cornell v Taylor LLP v Moore*, 200 Minn. App LEXIS 1317, at *11 (Min App Div Dec. 22, 2000)(quoting *Jankowski Lee & Assocs.*); *Cobble Hill Apts. Co*, 1999 Mass. App. Div. at 169 (the fact that tenant's reasonable accommodation request is neither specific nor suitable "does not relieve landlord from making one, particularly when tenant is handicapped by mental disability"). Compare *Andover Housing Authority v Shkolnik*, 443 Mass. 300, 820 NE 2d 815 (Mass. 2005) (housing authority did not violate "reasonable accommodation" requirement when evicting excessively noisy tenant, because housing authority had "made every effort to engage in an interactive process for ascertaining and accommodating [tenant's] condition" while tenants "impeded the authority's efforts to engage in a full interactive dialogue" by denying "that there was an ongoing and excessive noise problem"). *See generally* Jennifer L. Dolak

The U.S. Department of Housing and Urban Development has also taken this position. *See HUD v. Jankowski Lee & Assocs.*, HUDALJ 05-93-0517-1 (June 30, 1995) (once informed of the possibility that a tenant may need an accommodation, a landlord has the responsibility to explore that need and suggest accommodations). The HUD-DOJ Joint Statement explicitly calls for an "interactive process" in which the landlord and tenant "discuss the [tenant's] disability-related need for the requested accommodation and possible alternative accommodations," in the hope of negotiating "an effective accommodation for the [tenant] that does not pose an undue financial and administrative burden for the [landlord]." Joint Statement 7; *see id.* 9. Finally, when courts apply the reasonable accommodation provision of the Fair Housing Act, it is their established practice to rely on the Americans with Disabilities Act (ADA),42 USC §§ 12101, 12102, and the Rehabilitation Act (RA), 29 USC § 794, both of which mandate an interactive process through which employers and employees explore what accommodations are reasonable. *See* 29 C.F.R. § 1630.2 (o)(3) (1995); 29 C.F.R. pt. 1630 Appendix (1996); 29 USC § 794 (d); *Giebeler*, 343 F3d at 1156-57 (stating that court ordinarily applies RA case law in applying reasonable accommodation provisions of Fair Housing Act and also generally applies RA and ADA case

law "interchangeably"); *Good Shepherd Manor Foundation, Inc. v City of Momence*, 323 F3d 557, 561 (7th Cir 2003) (holding that Fair Housing Act requirements for showing failure to reasonably accommodate are same as those under ADA); *Shapiro*, 51 F3d at 335 ("reasonable accommodation" was intended to draw on case law under RA); *Erdman v City of Fort Atkinson*, 84 F3d 960, 962 (7th Cir. 1996) ("reasonable accommodation" requirement of Fair Housing Act is most often interpreted by analogy to same phrase in RA). The case law that the landlord relies on is factually distinguishable. *See, Lapid-Laurel v Zoning Board of Adjustment*, 284 F3d 442, 455 (3rd Cir. 2002) (holding that Fair Housing Act imposes no duty on local land use authorities to engage in informal interactive process with applicants for variance because those authorities "already face detailed state and municipal requirements mandating formal procedures, which, at least in some cases, prohibit them from engaging in informal, off-the-record negotiations"); *Groner*, 250 F3d at 1047 (holding that landlord violated no duty to engage in dialogue with social worker when landlord had already been in close contact with social worker for months). The Joint Statement 11 states that "An undue delay in responding to a reasonable accommodation request may be deemed to be a failure to provide a reasonable accommodation."

In a discrimination claim under the federal Fair Housing Act, when a tenant proposes a coherent, ostensible feasible accommodation responsive to her disability, the burden shifts to the landlord to ask for whatever additional details it considers necessary to evaluate that proposal. A landlord's obligation to elicit additional information about a basically understandable accommodation is no different from its obligation to fill out the details about a tenant's announced illness or elicit her reasons why a requested accommodation will alleviate her disability.

## DISABILITY

Under the DCHRA, a Plaintiff can establish that he has a disability if: (1) the Plaintiff has a physical impairment that "substantially limits" one or more of the Plaintiff's "major life activities;" (2) there exists a record of a physical or mental impairment whereby the Plaintiff has been classified (or misclassified) as having an impairment that "substantially limits" one or more of his "major life activities;"[2] or (3) the Plaintiff has a physical or mental impairment that the Defendant erroneously believes substantially affects one or more of the Plaintiff's "major life activities." *See,* 42 U.S.C. § 12102(2); *Liff v. Secretary of Transportation*, 1994 U.S. Dist. LEXIS 20970. The Plaintiff may establish that he suffered from a disability by sufficiently proving any one of the foregoing three elements. *Grant v. May*, 786 A.2d 580, 583 (D.C. 2001); *Cook v. RhodeIsland*, 10 F.3d 17, 22-23 (1st Cir. 1993); *Chandler v. City of Dallas*, 2 F.3d 1385, 1392 (5th Cir. 1993). However, Plaintiffs attempting to establish a qualified disability are held to a "demanding standard" in recognition that the ADA was intended to protect only those persons with impairments that preclude the performance of activities that are of central importance to daily life. *Toyota Motor Manufacturing v. Williams*, 534 U.S. 184, 197.

---

[2] The Respondent must be aware of this history.

A disability is defined as a "physical or mental impairment that substantially limits one or more of the major life activities of an individual having a record of such an impairment or being regarded as having such an impairment." D.C. Official Code § 2-1401-02(5A).[3] A physical impairment is "any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine." *Toyota*, 534 U.S. at 195-96. The ADA regulations define mental impairment as "any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(i). The term "impairment" does not include "transitory illnesses which have no permanent effect on the person's health." *Stevens v. Stubbs*, 576 F. Supp. 1409 (D. Ga. 1983). Instead, a disability must be a serious injury or impairment of more than a temporary nature. *Providence Journal Co. v. Mason*, 116 R.I. 614, 359 A.2d. 682 (1976); *Lyons v. Heritage House Restaurants, Inc.*, 432 N.E.2d 270 (Ill. 1982).

A physical or mental impairment "substantially limits" when it considerably limits or limits "major life activities" to a large degree. *Toyota*, 534 U.S. at 196-97. "Major life activities" are those activities that are of central importance to daily life. *Id.* This jurisdiction has defined "major life activities" as functions the average person in the general population can perform with little or no difficulty, including, but not limited to, walking, seeing, hearing, breathing, standing, sitting and working. *Croley v. Republican Nat'l Comm.*, 759 A.2d 682 (D.C. 2000). *Cf. Toyota, supra*, 534 U.S. at 200 ("because of the conceptual difficulties inherent in the argument that working is a major life activity, [the Supreme Court has] been hesitant to hold [that working is a major life activity]"). To make the *prima facie* showing, the employee must present evidence as to the nature and severity of her impairment, its duration or expected duration and the permanent or long-term impact. *Toyota*, 534 U.S. at 198.

In cases where a Complainant alleges that he/she was denied a reasonable accommodation, the Complainant must demonstrate that he/she requested an accommodation, *Evans v. Davis Memorial Goodwill Industries*, 133 F. Supp. 2d 24, 27-28, *aff'd* 2001 U.S. App. LEXIS 28415, described the accommodation sought, *Flemmings* at 861; *Heasley* at 165, and that the Respondent denied the request. *Evans* at 27-28.

***Complainant demonstrates that Respondent refused to make a reasonable accommodation for his disability.***

Complainant alleges that Respondent failed to accommodate his disability when Respondent denied or delayed granting Complainant's reasonable accommodation request of allowing him to change the due date on his rent from the first of the month to the 15th.

Complainant establishes a *prima facie* case for discrimination on the basis of his disability. Complainant establishes the first element by virtue of his membership in a protected class under the DCHRA and ADA (disability). Based on information in the OHR record, Complainant has a

---

[3] This definition is substantially similar to the ADA's definition of disability: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

physical impairment because he has demonstrated that he has a "physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine. Complainant has an endocrine/metabolic disorder (diabetes) and it resulted in an anatomical loss, amputation. Complainant has also demonstrated that his physical impairment substantially limits one or more of his major life activities. Complainant cannot ambulate, therefore, his mobility and his ability to work is substantially limited. Furthermore, there exists a record of a physical or mental impairment whereby the Complainant has been classified as having an impairment that "substantially limits" one or more of his "major life activities.[4] Complainant also meets the second element. The landlord knew or should have known of the disability. In addition, this accommodation of the disability may be necessary to afford the tenant an equal opportunity to use and enjoy her apartment. Complainant demonstrated that he requested a reasonable accommodation; he asked that the date for rent be changed to the 15th of the month. Finally, the Respondent refused to grant a reasonable accommodation. Therefore, Complainant establishes a *prima facie* case.

Respondent does not establish that granting the reasonable accommodation would be an undue burden. Respondents maintains they have never received Complainant's reasonable accommodation request, and have no obligation to accommodate Complainant's reasonable accommodation request, because the request would change their policies, and the accommodation is not related to his disability.

Respondent states that Complainant is afforded the same opportunity to pay the rent as everyone else, and given the same amount of grace days to pay his rent on time without incurring late charges. Respondents maintain that rent payments are a contractual matter, and are unrelated to Complainant's disability. Finally, Respondents note that when Complainant moved in during March 2003, he received a one-month concession on his rent, something which was given to all tenants at this time. Respondents declare that because of this one month rent-free concession given to Complainant, Complaint should actually be two (2) weeks early on his rent, not two weeks late.

Respondent's reasons for denying Complainant's accommodation are weak and discriminatory. To begin, under the DCHRA and the ADA, Respondent has an absolute obligation to accommodate Complainant's disability[5] or at the very least engage in the interactive process, even if it means changing its policies and practices. This is the basis for requesting an accommodation. Second, Respondent contends that the accommodation has nothing to do with Complainant's disability. Complainant has demonstrated he has a disability; and he receives his disability checks on the second Wednesday of the month. Therefore, he is asking for this accommodation because he receives the checks **for his disability** and inability to work after the first of every month. (*emphasis added*) Respondent's reasoning is unconvincing; and it is almost incredible that it gives this explanation for its denial or that it denied this nominal request.

---

[4] The Respondent must be aware of this history.
[5] Unless proving an undue burden.

*Henry Geter v. Trinity Community LP*
*OHR CASE NUMBER: 07-176-H*
*HUD CASE NUMBER: 03-07-0283-8*
*Page 12 of 12*

## CAUSE DETERMINATION

For the foregoing reasons,

1) **RESPONDENTS TWO (Veronica Brinkley)** and **RESPONDENT THREE (Connie Fletcher)** are **ADMINISTRATIVELY DISMISSED** as **RESPONDENT ONE** is the proper party in this dispute.

2) The OHR finds **PROBABLE CAUSE** to believe that Respondents One subjected Complainant to discrimination on the based on disability (diabetes and amputated limbs) when Respondent denied or delayed in granting Complainant's request of allowing him to change the due date of his rent from the first to the 15th of the month.

Respondents are requested to notify the OHR within ten (10) days after receipt of this letter of Determination as to whether they are prepared to pursue conciliation of this matter. If Respondents do not respond or do not respond in the affirmative, the OHR will issue a service of charge notifying the Complainants that they can elect to have this case processed for public hearing before the District of Columbia Commission on Human Rights or referred to the District of Columbia Office of the Attorney General for civil enforcement action in a court of competent jurisdiction.

*IT IS SO ORDERED.*

Sincerely,

Gustavo F. Velasquez
Director


cc:    Phillip L. Felts, Esq.
       Schuman & Felts, CHTD
       4804 Moorland Lane
       Bethesda, MD 20814

*U.C.C. - Article 2A - Leases*

*07-CV-0757 RBW*

## Exemplary Damages Attachment

Page **H**

Attachment To: __x__ Complaint _____ Cross-complaint

Ex -1. As additional damages Defendant's ( *see complaint filing's* )
Plaintiff alleges Defendants was guilty of
[  ] malice
[ x ] **fraud** e.g. a Tort ~ civil wrongs, the breach of a duty owed under - Statutory[1] Law
[  ] oppression
**x ~ 'a deception made for personal gain'**, and Plaintiff should recover, in addition
to actual damages, damages to make an example of and to punish Defendants.

Ex - 2. The facts supporting Plaintiff's claim are as follows:
**Horning Brothers** is a corporation and can act only through its officers or employees. As to plaintiff's claim for
compensatory damages against the **Individual Defendant's**, any act or omission of an officer or employee within
the scope of his employment is the action or omission of the defendant corporation.

As to **Plaintiff's** claim for punitive damages against the **Defendant's,** a different rule applies. Punitive damages
may be awarded against Defendant's only ... (1) If you find in favor of **Plaintiff(s)** and against the **Defendant's**
under count **I - IV** of the complaint, and  (2) If you find that, as to the act(s) or omission(s) giving rise to
liability under count **I -IV** , [ **Amended Complaint** ] [ one or (more) (all) of the following conditions (is)
(are) proved;]
a) [ the corporation, through its management, authorized the doing and the manner of the act or omission ][; or]
b) [ the employee responsible for the act or omission was unfit, and the corporation was reckless in employing
him or her] [; or]
c) [ *the act or omission was that of a managerial employee who was acting in the scope of his or her employment*]
[; or]
d) [ the corporation, through its management or a managerial employee, ratified or approved the act or omission].
This instruction is based on the requirements of *Restatement (Second) of Torts, Section 909* and the *Restatement
(Second) of Agency, Section 217C.*

**Hereto!** the embodiment of the " Corporate Complicity [2] " concept is in placed.

Ex - 3. The *amount of Exemplary Damages* sought is
a. [ __ ] shown, pursuant to code of civil procedure section 425.10; Rule 54(d1)
b. [ __x__ ] *$ 2,500,000.00* [*unto the statute the law requires three times an amount*]
*there upon the actual damages*

---

[1]. **Supreme Court: Treble Damages** ... Cohen v. De La Cruz, 532 U.S. 213 (1998)  citing ~ The debt for
fraudently obtaining $ 31,382.50 in rent payments includes treble damages and attorney's fees and cost,
petitioner's entire debt is $ 94,147.50 [plus attorney fee's and costs].   Grogan v. Garner, 498 U.S. 279, 287
citing ~ Debtor may not be discharged from, inter alia, obligations for money obtained by " actual fraud."    [See
Attachment C]

[2]. Punitive damages may be awarded against a corporate defendant for acts of its agents and employees
under the "corporate complicity rule", if the acts or omissions which proximately caused the injury were authorized
or participated in by a superior officer of the defendant corporation. Kemner v. Monsanto Co., 217 Ill. App.3d
188, 160 Ill. Dec. 192, 576 N.E. 2d 1146 (Ill. App. 1991)

## COMPLAIN STANDING TO SUE DOCUMENT

## <u>UNTO THE FEDERAL LAWS</u>

**COMPANY PROFILE: Horning Brothers ~ Private Company** .... founded by brothers Joseph and Larry Horning in 1958; Headquarters Location 1350 Connecticut Ave., Ste. 800 Washington DC United States  (202) 659-0700, (202) 659-9489 fax
**Management of properties and communities as ... *The Cloisters***



The defining <u>L</u>egal rights and obligations of the Corporation ~ ***the ability to sign CONTRACT***

Section 1983 plaintiff must show defendant's personal involvement or participation, or direct responsibility for conditions of which he complains by demonstrating causal link between defendant's conduct and plaintiff's injury. 42 U.S.C.A. Section 1983  *Reed v. McBride, 96 F. Supp. 2d 845.*

FILE COPY

## OWNERS AND MANAGERS OF MICHIGAN APARTMENT COMPLEX SUED FOR RETALIATION AGAINST DISABLED TENANT

On May 8, 2006, the Department filed a lawsuit against the owners and managers of the Fairway Trails Apartments, in Ypsilanti, Michigan, alleging that the defendants retaliated against a disabled tenant who had requested a reasonable accommodation under the Fair Housing Act. The complaint alleges that the defendants sent the tenant a letter stating that his lease would not be renewed two days after a state court judge ruled in an eviction proceeding that the defendants had to accommodate his disability by allowing him to pay his rent the third week of every month. The tenant received a Social Security Disability check on the third Wednesday of the month. The case was referred to the Justice Department after the Department of Housing and Urban Development received a complaint, conducted an investigation, and issued a charge of discrimination.

## DEPARTMENT SUES FLORIDA COUNTY FOR REFUSING TO ALLOW THE OPERATION OF SIX HOMES FOR INDIVIDUALS WITH MENTAL ILLNESS AND A HISTORY OF SUBSTANCE ABUSE

On June 30, 2006, the Department filed a federal lawsuit alleging disability discrimination by the County of Sarasota, Florida. The Department's complaint alleges that the county refused to allow Renaissance Manor, Inc. to operate six homes for individuals with mental illness and a history of substance abuse, although the homes at issue are permitted to operate as a matter of right under the county's zoning code. The Department contends that the homes, which are intended to provide a supportive environment for residents, are otherwise similar to other houses in the county inhabited by residents sharing living space and common facilities. The complaint also alleges that the county retaliated against Renaissance Manor by refusing to release grant funds it had previously awarded to it.

The suit seeks monetary damages to compensate the victims, civil penalties, and a court order barring future discrimination.

## STATE OF VERMONT WILL IMPROVE CONDITIONS AT STATE HOSPITAL FOR PEOPLE WITH PSYCHIATRIC DISABILITIES

The State of Vermont has reached a settlement agreement with the Department regarding civil rights violations in Vermont State Hospital, a hospital for people with mental health problems in Waterbury, Vermont. The four-year agreement filed in federal court in Vermont requires the State to implement reforms to ensure that patients in the facility are adequately protected from harm and provided adequate services including mental health care. The agreement will be supervised by jointly-agreed upon monitors. Under the terms of the agreement, the State will address and correct all of the violations identified by the Department, including the hospital's failure to protect patients from suicide hazards and undue restraint, failure to provide adequate psychological and

**ATTCHMENT F - MATERIAL EVIDENCE**