# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Henry W Geter II
    (Plaintiff)
      vs.

                      **Case File No:  07-CV-0757   RBW**

Horning Brothers Corporation
Trinity LP
Ms. Veda S. Brinkley
Ms. Connie Fletcher
    (Defendants)

## PLAINTIFF MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT MOTION FOR JUDGEMENT ON THE PLEADINGS; IN THE ALTERNATIVE, IN SUPPORT OF SUMMARY JUDGMENT

## MOTION FOR SUMMARY JUDGMENT

### TABLE OF CONTENTS

1. Statement of Issues Presented

2. Principal Controlling Authorities

3. Index of Exhibits

4. Conclusion

Introduction:

*NOW COMES*, Plaintiff Pro Se Henry W. Geter II, and asking of the Court for a Summary Judgment. There is now sufficient evidence in the 'Records of the Court' to support a decision in favor of the Plaintiff, for the relief given to the file complaint. In support of this Motion, Plaintiff

Pg 1

Rules of Court Violation : *Order 18 r. 20(2)*    Defendant's Motion  bleached " Close of Pleading " Rules; notwithstanding that any request or order for particulars has been made ... [see 11/19/07 Motion ]

**RECEIVED**

NOV 2 6 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

relies upon the accompanying: **Material Evidence** of the court records, **1**) **_Defendant's_** ~ Notice to Cure, **2**) **_Plaintiff_** ~ 'Official Response Letter', **3**) the **_Government's_** ... March 15th Letter ... **(OHR/HUD)** "Letter of Determination"    ( see statement of material facts ... below)

This **_Case is a federal violation of laws and statutes proceeding_**, in which Plaintiff pro se Henry W. Geter II seeks monetary relief due to the actions and conduct of the Defendant's: **Horning Brothers Corporation, Trinity LP, Ms. Veda S. Brinkley and Ms. Connie Fletcher.**

### Statement of Material Facts:
[ _as to which there is no Genuine Dispute_ ]

_Pursuant to Federal Rule of Civil Procedure 56(a)_... Plaintiff pro se Henry W. Geter II respectfully submits the following statements of material facts as to which there is no genuine dispute. **_[ all statements are placed from the material evidence of the court records ]_**

**1**). **Statement** " By continually and habitually paying your rent late. ~ You are hereby given notice to cure this violation."

**2**). **Statement** " To cure this issue... the following is offer! ~ Surely management can reasonable accommodate a change in my monthly payments from the 1st to the 15th ."

**3**). **Statement** ' The enclosed HUD housing discrimination complaint form has been prepared ...etc.'

The **Government Time Line**... place to the complaint filing;

February 2007 ...   Filing of complaint with HUD, concerning housing violation.

March   2007 ...   Received Certified Mail ~ enclosed Discrimination Complaint Form from HUD ... provided by Mr. Mark Hass  Inquiry No: 228088

**Pg 2**

Further!... The Supreme Court has held that punitive damages are available under Section 1983.[3] The court held that a jury could assess punitive damages in a 1983 action if the Plaintiff showed that the defendant's conduct was motivated by evil motive or intent or that the Defendant's conduct involved reckless or _callous indifference_ to the federally protected rights of others. [4] This *M*otion of the Plaintiff duly establish the **elements** [claims] for its judgment.

## B. Statutory Laws... *In violations by the Defendants*
### 1) Title VIII of the Civil Rights Act of 1968, as amended:

Prohibits discrimination in the sale, rental and financing of dwellings based in race, color, religion, sex or national origin ~ amended in 1988...
  * expanded the coverage of the Fair Housing Act to prohibit discrimination based on disability...etc.
  * revised and expanded Justice Department Jurisdiction to bring suit on behalf of victims in Federal District Courts.

### 2) The Fair Housing Act of 1988:
Sec. 804 [ 42 U.S.C. 3604 ] Discrimination in Sale, or Rental of Housing And Other Prohibited Practices... (f)(3)(B)
A refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling;

*NOW COMES*, the Defendant's _conduct_ via their professional management of The Cloisters and

its business activities and actions, they... withholding and denying the Constitutional Rights of the

Law, secure by federal statutes, given to the Complaint of the Plaintiff.

### OHR/HUD Fact Finding Investigation Profile:
[Statement of cause in facts... held with the ***Letter of Determination*** ]

**Pg 5**

---

[3]. Smith v. Wade 461 U.S. 30, 103 S.Ct. 1625 ( 1983 ).  ... ID at 56

[4]. The elements of, and the defense to, s 1983 claim are defined by federal law.  42 U.S.C.A. s1983. Doe v. Leach 988 P.2d 1252, 128 N.M. 28, 1999.  *[ See ... Viable claims violation pgs 8 - 11]*

**Statement of Facts ~ held to the " Letter of Determination..."**
[Statement ~ employees of Respondent One come under the auspices *Respondeat Superior/Vicarious Liability*.]

1. Statement...   ***Veda S. Brinkley is referred to as Respondent Two.***
2. Statement...   Respondent Two and Three <u>are employees of the management company.</u>
3. Statement...   Respondent One <u>is the owner of the apartment building (Cloisters).</u>

**Respondents ... *[Actual Acknowledgment... governing its Violations]***
1. Statement Respondent Two indicated ... <u>**even if they had received the request, the accommodation still would not be granted**</u>, ... <u>**that she then would have to grant other  residents request to do the same thing as Complainant**</u>. ... <u>**maintains they have  no  obligation  to accommodate  because  the  request would change their policies, and is not related to his disability.**</u>     [ *facts explicitly admitted... 'Words' of the Respondent* ]

**Investigator ...**
[*S*tatements ~ of ORH,  placed to its jurisdiction over the Complaint of  Discrimination ]

1. The DCHRA and FHAA provide that it is unlawful *for any person* to refuse to make a reasonable accommodation in the rules, policies, practices, or services, when such accommodation may be necessary ...etc.
   a) *D*iscrimination may be proven either by direct evidence of discrimination, *evidenced  by  the  **actions  or  words  of  the  Respondent**,*... etc..

2. Under the Fair Housing Act, as amended (FHAA), it is unlawful *for a housing provider* to refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary ... etc. 42 USC section 3604(f)(3)(B).

3. *S*tatement: under federal case law... *actionable discrimination* is not limited to the shorter cure period specified in a notice to cure or quit, or to any other period short of the eviction order itself.

4. *S*tatement: until a  landlord makes a good faith,  reasonable effort for an accommodation, upon request, ... the landlord's *continued pursuit of a pending action for possession is a discriminatory act* under the federal Fair Housing Act.

5. *S*tatement: the  Joint Statement 11  states  that  " *An undue delay* in responding

**Pg 6**

to a reasonable accommodation request may be deemed to be a failure to provide a reasonable accommodation.

6. *S*tatement: complainant establishes a *prima facie case* for discrimination on the basis of his disability.

7. *S*tatement:  Respondent's reason for denying Complainant's accommodation *are weak and discriminatory.*              [ *held to... Respondent Two, above* ]

8. *S*tatement: Respondent *has an absolute obligation to accommodate* Complainant's disability or at the very least  engage in the interactive process, even *if it means changing its policies and practices*.

9. *S*tatement: Respondent's *reasoning is  unconvincing;  and  it  is almost incredible* that it gives this explanation for its denial or that it denied this nominal request.

10. *S*tatement: for  the  foregoing reasons, the **OHR**  finds **PROBABLE CAUSE**  to believe  that  *Respondents One  subjected Complainant  to  discrimination on the based disability*...when Respondent denied or  delayed in granting Complainant's request...etc.  [*see attachment*... Letter of Determination]

**Claims of the Complaint Filed in US District Court:**  Held To Defendant's *C*onduct [5]...
1) Fair Housing Act Violation ...
2) Intentional Misrepresentation ...
3) Negligence ...                           [Numbers designate codes... see viable claims pgs 8 - 11]
4) Discrimination ...
5) Exemplary Damages...

**Affirmative Defenses Placed:**[6]
1) **1st Defense** ... complaint  fails to state any claim upon which relief may be granted.
2) **2nd Defense**... the relief sought... is barred... and lack of any statutory basis for any claims.
3) **3rd Defense**... no response is require... Defendants expressly deny all allegations of wrongdoing; ...**admit** ~ they  had  *property management responsibilities* etc.

**Pg 7**

---

[5]. When multiple causes of injury are present, a defendant's conduct is a cause in fact if it is a substantial factor generating plaintiff's harm.  – Abadie v. Metropolitan Life Ins. Co., 784 So.2d 46, 00-344 rehearing denied.

[6]. A summary judgment movant may satisfy the burden to show there is no genuine issue of material fact and that he is entitled to judgment as a matter of law by conclusively establishing all elements of affirmative defense.  City of San Juan v. Gonzalez, 22 S.W. 3d 69.

4)  1st Claim for Relief (***Fair Housing Act Violation***)... denied
5)  2nd Claim for Relief (***Intentional Misrepresentation***)... denied
6)  3rd Claim for Relief (***Negligence***)... denied
7)  4th Claim for Relief (***Discrimination***)... denied
8)  5th Claim for Relief (***Exemplary Damages***)... denied
9)  **4th Defense**... deny any averment of fact not explicitly admitted
10) **5th Defense**... any award of punitive damages ... violate the Due Process Clause of the United States Constitution.
11) **Pray that said Amended Complaint be dismissed**...

> ***Legal ruling:*** **Cavanaugh v. Skil Corp., 751 A.2d 564, 331 N.J. Super. 134**...
> When affirmative defense is raised in civil case, defendant normally has burden of proving [7] it.

## Appellate Ruling's : *Existing Case Law\**     [ Viable Claim Violation's ]
### *Disputes involving pure legal issues, as to an __obligation__ of a Fed. Statute*
[*Appellate Rulings in Support of Statement of Issues and Claims; above*]

1.  **Manuel v. Wilka, 610 N.W. 2d 458, 2000 SD 61**          ... [a]1
    One who initiates civil proceedings against another has <u>probable cause</u> for so doing if he reasonably believes in the existence of the facts upon which his claim is based, and reasonably believes that under such facts the claim may be valid at common law or under existing statute.   ***[see OHR/HUD Letter]***

2.  **Reese v. Jefferson School Dist. No. 14J, 208 F.3d 736**          ... [a]4
    To succeed on a section 1983 equal protection claim, the plaintiffs must prove that the defendants acted in a discriminatory manner and that the discrimination was intentional. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. s 1983

3.  **Rivers v. O'Brien, 83 F.Supp.2d 328**          ... [b]5
    In the Second Circuit, personal involvement of defendants in the alleged constitutional deprivation is a prerequisite to an award of damages under s 1983. 42 U.S.C.A. s 1983

**Pg 8**

---

[7]. Where plaintiff uses summary judgment motion, in part, to challenges legal sufficiently of affirmative defense, on which defendant bears burden of proof at trial, plaintiff may satisfy its Rule 56 burden by showing that there is absence of evidence to support essential elements of nonmoving party's case. **FDIC v. Giammettel, 34 F 3d 51.**

4. **Childers v. Monson, 524 S.E.2d 326, 241 G. App. 70**         ... [a]3
   Violation of a statute constitute negligence per se if the injured person falls within the class of persons intended to be protected by the statute and the harm complained of was the harm the statute was intended to guard against.

5. **In re Bennett Funding Group, Inc. 336 F.3d 94**         ... [a]3
   Misconduct of managers within scope of their employment will normally be imputed to corporation.

6. **Travelers Indem. Co. v. Bloomington Steel & Supply Co. 718 N.W. 2d 888**
   A corporation can be held liable for a tort just as a natural person can. [c]3

7. **Scarborough v. Dillard's, Inc., 632 S.E. 2d 800**         ... [c]2
   A party needs to show only one of the statutory circumstances, i.e., fraud, or malice, or willful or wanton conduct, to recover punitive damages from a corporation. West's N.C.G.S.A s 1D-15(A).

8. **Lawson v. Dallas county, 112 F.Supp.2d 616**         ... [c]5
   Plaintiff in section 1983 action who has established liability of defendants is entitled to recovery compensatory damages for physical injury, pain and suffering, and mental anguish that he has suffered in the past - and is reasonably likely to suffer in the future - to extend they are proximately caused by the defendants' wrongful conduct. 42 U.S.C.A section 1983.

9. **American Civil Liberties Union of Kentucky v. McCreary County, Ky, 96 F.Supp.2d 679**         ... [a]2
   In order for an entity to be liable for violation of a federal constitutional or statutory right under section 1983, entity's policy or custom must have played part in the violation. 42 U.S.C.A. section 1983.

10. **Cooper v. Burnor, 750 A. 2d 974**         ... [a]3
    Proof of violation of a safety statute creates a prima facie case of negligence.

11. **Shaffer v. Acme Limestone Co., Inc. 524 S.E. 2d 688**         ... [a]3
    A violation of a statute is prima facie evidence of negligent. When a statute imposes a duty on a person for the protection of others it is a public safety statue and a violation of such a statute is prima facie evidence of negligence unless the statute says otherwise. - Id.

**Pg 9**

12. **Jennings v. Mid-American Energy., 282 F.Supp. 2d 954**  ... [b]2
    A corporation may only be held liable for the torts of its employees when
    the employee is acting within the scope of his or her employment; the
    conduct must be necessary to accomplish the purpose of the employment
    and is intended for such purpose.

13. **McGee v. A.C. And S, Inc. 933 So. 2d 770, 2005-1093 (L.A. 7/10/07)**
    A torteasor must compensate a tort victim for all of the damages occasioned
    by his act.                                                    ... [b]2

14. **Benton v. Hillcrest Foods, Inc. 524 S.E. 2d 53**          ... [b]2
    A "wanton" act is an act done with a wicked purpose or done needlessly,
    manifesting a reckless indifference to the rights of others ... an act is
    "willful" when there is a deliberate purpose not to discharge a duty, assumed
    by the contract or imposed by law, necessary for the safety of the person or
    property of another. Id.

15. **Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097**  ... [a]1
    As general principle of evidence law, the fact finder is entitled to consider a
    party's dishonesty about a material fact as affirmative evidence of guilt.
    ...............[ *fact finder unto this complaint! is the US Government  - HUD* ]

16. **Northrop Grumman Corp. v. U.S., 46 Fed.Cl. 622**          ... [a]1
    Government officials are presumed to act in good faith.

17. **Welch v. Esptein, 536 S.E. 2d 408, 342 S.C. 279.**        ... [a]1
    A conscious failure to exercise due care constitutes "willfulness," for
    purpose of awarding punitive damages.

18. **TXO Production Corp. V. Alliance Resources Corp, 509 U.S. 443,**
    **113 S.Ct. 2711, 125 L. Ed. 2d 366**                        ... [c]5
    Punitive damages award that was 526 times the compensatory award did
    not violate due process.

19. **In re LifeUSA Holding Inc., 242 F.3d 136**                ... [c]5
    A complaint will be deemed  to satisfy the required amount in controversy
    unless defendant can show to a legal certainty that plaintiff cannot recover
    the amount.
                              **Pg 10**

20. **Flentje v. First Nat. Bank of Wynne, 11 S.W. 3d 531, 340 Ark. 563**
Arguments of counsel are not evidence. [Affirmative Defense lack evidence]

**Rules/Opinion ~ *Placed to US District Courts:***

A) **In re Douglas D, 626 N.W. 2d 725, 243 Wis. 3d 204, 2001 WI 47.**
Courts are bound to decide cases based on the facts before them.

B) **Weakley v. City of Dearborn Heights, 612 N.W. 2d 428,
240 Mich. App. 382**
Motion for summary disposition tests whether there is factual support
for a claim; court must consider the pleadings, affidavits, depositions,
admissions, and other documentary evidence available to it. MCR
2.116©)(10).

C) **City of San Juan v. Gonzalez, 22 S.W. 3d 69**
A summary judgment movant may satisfy the burden to show there is
no genuine issue of material fact and that he is entitled to judgment as
a matter of law by conclusively establishing all elements of affirmative
defense.

...

© *Plaintiff's Memorandum "Upon Elements of the Affirmative Defense"*

Presently pending and ready for resolution in this civil rights case is this **Motion For Summary**

**Judgment**, by the Plaintiff Henry W. Geter II pursuant to Fed. R. Civ. P. 56.  The issues have been

fully briefed and no hearing is deem necessary.  For reasons that follows, the Court should **Grant**
the

Plaintiff Motion.                    [ 1ˢᵗ , 2ⁿᵈ, 3ʳᵈ, 4ᵗʰ, and 5ᵗʰ... Denotes Plaintiff Claims ]   ...

*I. Background ...*
Plaintiff brings this suit pro se against the Owner of The Cloisters ~ Trinity LP,
Horning Brothers Corporation ~ management company of the Cloisters, and its
Managers ... Ms. Veda S. Brinkley and Ms. Connie Fletcher. Alleging numerous
counts stemming from a denial of a '*Reasonable Accommodation*' request, held     *1st*
to the rental of property. While Defendants have answered the Complaint and set
forth Affirmative Defenses, they have not establish proof of its Defenses.
**Pg 11**

On March 28th 2003, Plaintiff signed a Lease Agreement ( Contract ) for rental of property therewith The Cloisters. During his tenancy Plaintiff became disable, requested of management ~ Ms. Connie Fletcher (Manager) an action for 'Reasonable Accommodation' due to his disability. Plaintiff request was denied.

On Feb 16th 2007, management submitted a " *Notice to Cure or Vacate* " to the Plaintiff. Plaintiff in response to this communication, again submitted its request for 'Reasonable Accommodation' to Ms. Veda S. Brinkley (Manager). Rising the fact that this request was placed to Ms. Fletcher prior to this Notice. Again! management denied the request; lending to the filing of a 'Complain' of discrimination with the Department of Housing and Urban Development (**HUD**).

Plaintiff now move affirmatively for Summary Judgment place to the conduct of both Managers, to whom there is *firm evidence of the violation of federal*   **3rd** *laws.*

## II. Standard of Review...

Unto the signing of the Lease for rental property by the Plaintiff, management by law, had upon its administrative duty and a responsibility to the collection of the monthly rental payments! However! once the awareness of the tenant disability was made known to Managers; this physical impairment rendered to his existence, required upon management via its Managers an *obligation*   **1st** to the equal protection of the Plaintiff Constitutional and Statute Rights unto the law, place upon the safe guarding of his due process standing.

Here the entity and its employer ~ Horning Brothers Corporation, had an obligation ... imposed upon a duty of care, to provide and conduct its Professional Services within the boundaries given to those Laws, now ~ seen upon one to whom have a medical disability. For the management firm and its staff was governed to enforce those statutory laws held to people with Disability. The central statute being the ***Fair Housing Act of 1988.***   **1st**

This federal statute establishes the right of a tenant to request an action for 'Reasonable Accommodation', where this action would render to him the full enjoyment of the dwelling rented. In denying this request without clause, management and its staff (Managers) violated the law and the rights of the Tenant.

**Pg 12**

does not remove the filing of civil rights violation under Title 42 s1983 upon the management firm ( Horning Brothers Corporation) and its Managers ... Ms. Veda S. Brinkley and Ms. Connie Fletcher.

### III. *Analysis ...*

Accordingly!  Plaintiff argues that Defendants have failed to demonstrate a dispute of material facts with regard to the issues, unto the allegations made thereto his Complaint. Here the Plaintiff is correct... and,  the claims raised gives legal standing of law; defendants have  a  responsibility to come forth with evidence sufficient to generate their defense ( proof)... *t*hey did not.

### IV. *Evidence Relied Upon ...*

Full ***Records of the Court***... Complaint , Memorandum's, and Motion's

### V. *Definition...*

***Tort Liability***... A ***tort***  is an injury to another person or to property which is compensable under the law.  Categories  of ***torts*** include: negligence ...    ***3rd*** and **intentional**  wrongdoing.  To gives rise to legal claim in tort,  an  act    ***2nd*** (or inaction) must satisfy ***four elements*** [9]

        1) there must be a legal ***duty of care*** to another person;
        2) there must be a breach of that duty;
        3) the claimant must have suffered damages; and
        4) the damages must have been proximately caused by the breach
           of duty

***Concurrent negligence*** ... Arises where the same injury is proximately caused    ***3rd*** by the concurrent [10] wrongful acts or omissions of *two or more persons acting independently*.

### 3. *Index of Exhibits:*

      1)  Defendants ... Notice to Cure or Vacate
               **Pg 14**

      2)  Plaintiff's Response ... for 'Reasonable Accommodation'

---

[9]. Summary judgment  is proper against a party  who  fails  to  make  a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial. Matter of Estate of Stanton, 472 N.W. 2d 741, 746

[10]. When a defendant's negligence is a concurring cause, the law regards it as a legal cause regardless of the extent to which it contrubutes to that injury. – Bonanno v.Central Contra Costa Transit Authority, 107 Cal. Rptr.2d 916.

a) *OHR/HUD ... Letter of Determination*
b) *Plaintiff's ... Record Log 50000*
c) *Plaintiff's Standing to Sue Document*
d) *DFEH News Brief... Nov. 4th 2005*

## 4. *Conclusion:*

*N*oted! the fact that Ms. Brinkley - Manager,  initiated the action held to  the  filing  of  the  complaints;  she  placing  the  "Cure  Notice"  with  Ms. Fletcher - Manager, to be submitted to Mr. Geter II  gives evidence of both parties, **concurrence**  upon  the  **negligence**  action  raised,  due  to  their denial of the '**reasonable accommodation**' request. Both parties having knowledge of the *material facts* given to this document, independently had an  obligation  to conform to the <u>duty of care</u> [11], <u>unto  the  "**Fair Housing Act of 1988**</u>" ... when they received the Plaintiff's request for ' Reasonable Accommodation.' The ability to <u>provide and oversee this mandated care ... establish by law;</u>  and **each did not** and are now enjoined  to this violation. *3rd* *4th* *1st* *2nd*

Unto their action and or inaction scored[12] the violation of Constitutional and Statutory Laws, upon the Plaintiff. This breach of duty, denied! to one whom is disable [ having a physical impairment ], establish the *r*ights of  the Plaintiff to seek **damages via a lawsuit**; where the deprivation of rights were a cause in fact, imputing the violations argue unto this breach of duty. As  employees of the management entity, <u>the Entity too is liable,</u>  as well as the  Owner, in whom *placed a contract*  for the entity services. *5th*

According  to  Law  there  is  no  dispute  that  *the  claims  are  viable*  and genuine to the  law.

The LAW... what is its purpose?

Law,  in  its  generic  sense,  is  a  body  of  rules  of  action  and  *c*onduct prescribed by *controlling authority*, and having binding legal force. **United States  Fidelity  and  Guaranty  Co.  v.  Guenther,  281  U.S. 34, 50 S.Ct. 165, 74 L.Ed. 683.**    [See: ...2) Principal Controlling Authorities *a*bove] *1st*

**Pg 15**

---

[11]. An  actionable  negligence  " consists  of  a  duty  on  the  part  of  an  allegedly  negligent  party  to protect the  plaintiff from injury, a failure to  discharge  that duty, and a  resulting  injury  proximately caused  the  **breach of the  duty**." Rogstad v. Dakota Gasification Co. 2001 N.D. 54, 623 N.W. 2d 382.

[12] Scored   ... to orchestrate ` *American Heritage Dictionary: All-New Fourth Edition.*

Here we are given to the fact that within the 'body of the purpose ...' the *controlling authority* ...*The Fair Housing Act*, promote the general welfare of the citizen, and *not to allow one to prohibit its legislative intend*.

That the review of the *legislative intent* is foundation to its construction / interpretation. As held to the Supreme court..." in interpreting a statute a court should always turn to one cardinal canon before all others .... courts must presume that a legislature says in a statute what it means and means in a statute what it says there." **Connecticut Nat'l Bank v. Germain 112 S.Ct. 1146, 1149 (1992)**

Here statutory interpretation is clear as presented by the Plaintiff... and     *1st* the legal remedies given are , too!, fully cited hereto by the law.[13]

*F*urther! *s*1983 the actions for federal statutory violations are limited to violations of statutes that create federal rights. Three factors determine whether a statutory provision creates a federal right: (1) Congress must have intended the provision to benefit the plaintiff; (2) the right assertively protected by the statute must be sufficiently clear for competent judicial enforcement; (3) the statute must unambiguously impose an *o*bligations on the states. Wilder v. Virginia Hosp. Assoc., 110 S.Ct. 2510

It is well establish that once the provisions of a statute is enacted by its Codification, that provision constitute legal evidence of the law in all Federal and State Courts. And *HUD* establishing this *o*bligation by law.

For the reasons stated above, Plaintiff's "Motion For Summary Judgment" should be *GRANTED*.[14]

...
**Pg 16**

---

[13]. A party moving for summary judgment will prevail if there is no genuine issue of material fact and the record establishes that the party is entitled to summary judgment as a matter of law. **Hikita v. Nichiro Gyogyo Kaisha, Ltd., 12 P. 3d 1169**

[14]. **Vandepute v. Soderholm, 298 Minn. 505, 507 - 08, 216 N.W. 2d 144, 146**   To survive a motion for summary judgment for a claim of intentional misrepresentation, party must prove his claim with substantial evidence and specific facts. ... **Hazelton v. Comm'r of Dep't of Juman Servs., 612 N.W. 2d 468, 471 (Minn.App. 2000)** Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

## MOTION FOR SUMMARY JUDGMENT

**WHERE FORTH** the Defendant's actions and or inactions were placed to policies that are unconstitutional; as to the way ...via its managers presentation of authority shows, their conduct invited a discrimination enforcement claim, coupled to: *a violation of the Fair Housing Act*, which too! was Negligence and an Intentional Misrepresentation of Constitutional and Statutory Law. For this purpose and effort [ ***its conduct*** ] upon their non-application of federal law, created the legal atmosphere patron to the Plaintiff Complaint upon all Defendants.

*Under the federal Fair Housing Act*, unlawful discrimination occurs whenever a dwelling is denied to a renter because of that renter's disability.  Radecki v. Joura, 114 F3d 115 (8th Cir 1997)...; a landlord is only obligated to provide a reasonable accommodation to a tenant if a request for the accommodation has been made.  Joint Statement 11.   [ ***see Letter of Determination ... 7 of 12*** ] ***Further unto this material evidence (Letter)***, one can establish the intentional nature of the Defendant's  action and or inactions, according to the statement posted to the records of the government investigation... *i.e.* " *Respondents also provided a list of seven (7) different residents whom they have granted reasonable accommodations for in the past year.  These accommodation ranged from handicapped parking signs, to removing carpet and widening doorways, to unit transfers for residents. "* Yet when Mr. Geter II (Plaintiff ) ask for this reasonable accommodation request, his request to management was a denial. This event! held to the conduct of management and its staff (employees), *establish a selective choice* upon whom (its tenants), within the apartment

**Pg 17**

complex of the Cloisters would receive the rights of federal laws. ***And Further*** this '**list**' gives evidence of the Defendants *knowledge upon the law*... given to the Fair Housing Act, establishing *i*ts conduct and action of 'intentional misrepresentation.'

This activity gives a legal foundation upon ... *intentional misrepresentation*.[15] It is seen here that the Managers failure to apply the Constitutional and Statutory Law given to the Fair Housing Act, as granted to those tenants, in whom their was a *special selections acceptance*. Where! Mr. Geter II did not meet this acceptance level.[16] That here! one cannot say that he ( Mr. Geter ) was over looked; being that there were seven (7) granted approvals there in the year, but shows, an *intentional misrepresentation* thereto a *duty of care* [17]...owed this tenant; his right of due process. Ms. Vera S. Brinkley ... statement hereto! *defines this selection policy*, upon those tenants to whom they would not provide a reasonable accommodation to, when such request were center upon a distinct nature. This **distinct nature** raises in evidence a *conscious deprivation of the laws*, in the management of the Plaintiff request. Further this " intentional misplacement "[18] (policy) of federal law upon *i*ts tenants, were saddle upon the personal attachment to the Managers; where in this

**Pg 18**

---

[15]. *FRAUD* – is generally defined in the law as an intentional misrepresentation of material existing fact made by one person to another with knowing of its falsity and for the purpose of inducing the other person to act, and upon which the other persons relies with resulting injury or damages.

[16].Cal. App. 2 Dist. 2000    At some point, a failure to follow the law, or the continued application of an arbitrary and irrational standard, will rise to the level of a substantive due process violation. U.S.C.A. Const.Amend. 14 - **In re Rosenkrantz, 95 Cal.Rptr. 2d 279, 80 Cal.App.4th 409**

[17]. See ***tort liability*** ...pg 15 above

[18].Ga.App. 1992    Intent may be proved by circumstantial evidence.  **Derosa v. Shiah, 421 S.E. 2d 718, 205 Ga.App. 106, certiorari denied.**

attachment one would be rewarded. This conduct voided the obligations due [equal protection] [19] to all its tenants. *This action of management establishes the Plaintiff Claim.* This custom at best was a willful neglect. For the application of a policy, designed to deprive one of its rights thereto Constitutional and Statutory Law, is given to the elements[20] of a **tort**; when not placed equally

upon the full tenancy, they having a legal *nexus* to the complex mentioned. Defendant's actions are by law, a discriminatory policy.. which underwrite's a prima facie case,[21] and management is liable. Further evidence is giving to Ms. Brinkley Statement: "*they having no obligation to accommodate reasonable accommodation request, because such would change their policies, is not related to his disability*".

**WHERE FORTH** In that the Government ( *HUD* ) conducted an adequate and reasonable investigation ~ a fact finding status, upon the Defendant's business procedures, and policies

governing their actions and or inactions, there... it found them in violation of a Federal Statutory Law [ Fair Housing Act of 1988 ]; holding the Owner ... *Trinity LP to DISCRIMINATION*. [ as seen upon the ***Managers conduct***, they being the employees of Horning Brothers Corporation ].

**Pg 19**

---

[19] C.A. ( (Or.) 2000. To succeed on a section 1983 equal protection claim, the plaintiff must prove that the defendants acted in a discriminatory manner and that the discrimination was intentional. U.S.C.A. Const.Amend 14, 42 U.S.C.A s 1983. **Reese v. Jefferson School Dist. No. 14J, 208 F.3d 736.**

[20]. See pg 15 above ... *four elements*

[21].N.Y.A.D. 2 Dept. 1995. In order to establish a prima facie case of negligence, plaintiff must demonstrate: (1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) an injury to plaintiff as a result thereof. **Gaeta v. City of New York, 624 N.Y.S. 2d 47, 213 A.D. 2d 509**

_**Thus**_! The **_Defendant's Affirmative Defenses_** are therefore without merit.[22]

**COMES NOW** the Plaintiff, Henry W. Geter II a 58 year old Black American ( **_Disable_** ), respectfully moves, pursuant to Fed. R. Civ. P. 56, for Summary Judgment in this action. In support of this Motion, Plaintiff relies upon his Amended Complaint, the above Memorandum, the Government [**OHR/HUD** ~ Letter of Determination], and the full ... Records of the Court[23].

**WHERE FORTH**    The statutory languages of the law are governed to a secure action and activities place to its legislative authority; to _o_ne (person and or entity) where there is a management contract... **_it!_** being held to an _o_bligation to perform a _duty of care_. Management and its staff (employees) are firmly held to this law; established to protect the right of those citizens whom fall within its standard boundaries. Plaintiff has these point's of law... **_seeded_** to his Complaint, and those _**citing's of law, supporting his cause of action**_. _F_urther...

This matter is presented...as a claim of 'Intentional Misrepresentation' ~ a **tort**, has legal standing. **_The law_**. "... A tort cause of action accrues when the plaintiff knows or has reason to know that she has suffered damage due to another's wrongful act. Ogle v. Caterpillar Tractor co. 716 P 2d 334, 337 (Wyo. 1986)"

It is clearly shown here that Mr. Geter II knew of this wrongful act, and knew he had the right
**Pg 20**

---

[22].**Perelman v. Snowbird Ski Shop, Inc., 215 AD 2d 809, 810**    Summary judgment granted on unpleaded affirmative defense supported by moving papers where plaintiff alleged lack of merit of the defense.

[23]. Records, reports and orders of **administrative agencies** are " official acts " of which a court may take judicial notice. Rodas v. Spiegal, 104 Cal. Rptr. 2d 439, Cal.App. 4th 513, as modified.

to file a complaint with **HUD** ...and too! filed a case in _Federal Court_.  Now it is seen with **HUD**, they having establish the claim; noted to (**DISCRIMINATION**) , which is given also! to the filed Complaint with the **_US Federal District Court._**

...

> _Distilled to its simplest form_, the **material facts** in this case are not in dispute, and is secured by the Government investigation ... held to its **_Fact Finding Activity_**.
>
> a) Plaintiff submitted a request to the Defendants's for '**_reasonable accommodation_**'; to management ... thereto his rent, based on his disability.
> b) Record ..._material evidence_, of this submittal has been verified by the government... **OHR/HUD**.

Issue: **_W_**hether Defendant's denial of this request... violated federal law?

...

**_Given this fact_**! _The ONLY issue to be decided is purely a legal one_; Is the Defendants denial to

the <u>reasonable accommodation</u> a violation federal law?  And is there a standing of relief, that

can to granted to the Plaintiff. **_Summary Judgment_** _is proper where the only questions presented are question of law_.   **Key Note:** <u>**The Fair Housing Act** requires owners of housing facilities to make reasonable exceptions in their policies and operations to afford people with disabilities equal housing opportunities;</u>     The Owner has been charge with **_D_**iscrimination[24];

laying ground ... **for Partial Summary Judgment.**


Further:  Title VIII of the Civil Rights Act of 1968 ( **Fair Housing Act** ), as amended _prohibits_
Pg 21

---

[24].Md .App. 2000   Included among categories of things of which judicial notice may be taken are facts relating to records of the court. 5-201(b). **Lerner v. Lerner Corp., 750 A.2d 709, 132 Md.App. 32**

*discrimination*, and in other housing - related transactions... and handicap ( *disability* ).. That a ***person*** or ***entity*** engaging in prohibited conduct - i.e. Refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a person with a disability an equal opportunity to use and enjoy a dwelling - may be held liable unless they fall within an exception to the Act's coverage.

Courts have applied the Act to ***individuals, corporations, associations*** and others involved in the provision of housing and residential lending, including ***property owners, housing managers,*** homeowners and condominium associations, lenders, real estate agents, and brokerage services. [ s                                          e                                                       e e.g. *City of Edmonds v. Oxford House, Inc., 514 U.S. 725, 729 (1995)* ; **Project Life v. Glendening, 139 F.Supp 703, 710 (D.Md. 2001), aff'd 2002 WL 2012545 ( 4th Cir. 2002)** ]

**Plaintiff ! Now Acknowledging**: *This Motion is ripe for ADJUDICATION* [25]

**Legal Citing**: With no genuine issues of *material fact* in dispute, the matter was ' ripe for summary judgment.'      *Rich v. Blue Cross & Blue Shield, 604 A.2d 1260, 1261 (R.I. 1992) (citing Golderese v. Suburn Land co., 590 A.2d 395, 396 (R.I. 1991)*

## CONSEQUENCES

**The Defendants** have not met the standard of care required by law unto Case  Management

**Pg 22**

---

[25]. To justify an award of punitive damages, a plaintiff must demonstrate the defendant's conduct was willful, wanton, or undertaken in reckless disregard of plaintiff's right.  Code 1976 section 15-33-135 **Kuznik v. Bees Ferry Associates, 538 S.E. 2d 15, 342 S.C. 579.**

defined to _Motion_ [violation of Rules; ***Order 18 r.20(2)***)][26] and so should suffer the consequences o f

Federal Rule of Civil Procedure 16(f) which permits utilization of Federal Rule of Civil Procedure 37(b)2(B) and (C). These latters rules contemplate orders refusing to allow the disobedient party to support or oppose designated claims or defenses and also orders allowing designate facts to be taken as established for the purposes of the action in accordance with the claim of a person obtaining the order. ***Here that person is the Plaintiff.***        **Rule 16(f)** incorporates portions of Rule 37(b)(2), **i.e.** (B) and (C)...which prescribes[27] sanctions for *failing to make discovery.* This _r_uling provides in pertinent part that " the court may order stricken from any pleading any insufficient defense." Also! the defendants conduct removes the Plaintiff rights to Rule 30(b)(6) and Rule 31(a).

## SUPREME COURT CITING

**The Seventh Amendment...** To the United States Constitution provides that "[*I*]n suits at common

law... the right of trial by jury shall be preserved..."   The United States Supreme Court has established

the appropriate Seventh Amendment Inquiry:

> To determine whether a particular action will resolve legal rights,   we examine both the nature of the issues involved and the remedy sought. **" First, we compare the statutory action brought** in the courts of England prior to the merge of the courts of law and equity.   **Second, we examine the remedy sought** and determine whether it is legal or equitable in nature ." [ Tull v. United States, 481 U.S. 412, 417 - 418 (1987) ]. The second inquiry is the more important in our analysis. Granfinanciera, S.A. v. Nordberg, 429 U.S. 33, 42 (1989).
> **Pg 23**

---

[26]. Professionals are judged according to the standard of care required by their profession. – Jennings v. Case, 10 S.W.3d 625, appeal denied.

[27]. **(B)** an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence. - **(C)** which permits the sanctions of striking pleadings, including ***affirmative defenses***.

## FRCP VII. Judgment

### Rule 56.  Summary Judgment

**(a) For Claimant.**  A party seeking to recover upon a claim... may ... at any time after the ... service of a motion for summary judgment by the adverse party, move ... for a summary judgment in the party favor upon all or any part thereof.

**\*Defendant's Motion For Judgment [28] On The Pleading [29]... *I*s filed as a _Summary Judgment_**

## JUDGMENT

It is **ORDERED, ADJUDGED, and DECREED** that there be judgment in favor of the Plaintiff,

Henry W. Geter II, and against the Defendants, Trinity LP, Horning Brothers Corporation, Veda S.

Brinkley,  and  Connie Fletcher,  in  the  full  sum  of  *Two Million Five Hundredth Thousand*

*($2,500,000.00) Dollars*; filed by the Plaintiff to be determined by a jury,  with legal interest from

date of judicial demand, until paid, and all costs of this suit.

Respectfully Submitted,

*Henry W. Geter*
Henry W. Geter II
**Plaintiff / Tenant**
100 Mich. Ave. N.E.  Apt. A-11
Washington DC   20017

Dated: _11/26/_, 2007

**Pg 24**

---

[28].  "[A] motion for judgment on the pleading's should not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that the movant is entitled to a judgment as a matter of law. **Minor v. Minor, 70 NC App 76, 78, 318 S.E.2d 865, 867, Disc. Review Denied, 312 NC 495, 322 S.E.2d 558** ... When the pleadings do not resolve all the factual issues, judgment on the pleadings is generally inappropriate. **Ragsdale v. Kennedy, 286 N.C. 130, 137, 209 S.E. 2d 494,499.**

[29]. Pleading need allege only sufficient facts to apprise opposing party of nature of claim.  Van Dyke v. Broadhurst. 28 F.Supp 737; In re Stroh 52 F Supp 958

## CERTIFICATE OF SERVICE

I    Henry W. Geter II    HEREBY CERTIFY on this ____26 ᵗʰ____ day of ____NOV.____,
2007, that a copy of the foregoing MOTION  was mailed to the Defendants:

> Horning Brothers Corporation
> Trinity Community LP
> Ms. Veda S. Brinkley
> Ms. Connie Fletcher

*VIA ITS ASSIGNED ATTORNEYS*: David P. Durbin, Esquire, 1100 Conn. Ave. N.W. Suite 600,
Washington D.C. 20036, by  first-class mail *FOR THE DEFENDANTS* ~ Ms. V.S. Brinkley and
Ms. Connie Fletcher, Horning Brothers Corporation, and Trinity LP.

Henry W. Geter II
100 Mich. Ave. N.E.  Suite A-11
Washington DC 20017

*U.C.C. - Article 2A - Leases*                                          *07-CV-0757 RBW*

## Exemplary Damages Attachment                    Page **H**

Attachment To:  **x**  Complaint _____ Cross-complaint

Ex -1.  As additional damages Defendant's ( *see complaint filing's* )
      Plaintiff alleges Defendants was guilty of
        [ ] malice
        [ x ] **fraud**  e.g.  a Tort ~ civil wrongs, the breach of a duty owed under - Statutory[1] Law
        [ ] oppression
        **x ~ 'a deception made for personal gain'**, and Plaintiff should recover, in addition
           to actual damages, damages to make an example of and to punish Defendants.

Ex - 2.  The facts supporting Plaintiff's claim are as follows:

      **Horning Brothers** is a corporation and can act only through its officers or employees. As to plaintiff's claim for compensatory damages against the **Individual Defendant's**, any act or omission of an officer or employee within the scope of his employment is the action or omission of the defendant corporation.

      As to **Plaintiff's** claim for punitive damages against the **Defendant's**, a different rule applies. Punitive damages may be awarded against Defendant's only ... (1) If you find in favor of  **Plaintiff(s)** and against the **Defendant's** under count **I - IV**  of the complaint, and  (2)  If you find that, as to the act(s) or. omission(s) giving rise to liability under count **I -IV**,  [  **Amended  Complaint**  ] [ one or (more) (all) of the following conditions (is) (are) proved;]
        a) [ the corporation,  through its management,  authorized the doing and the manner of the act or omission ][; or]
        b) [ the employee responsible for the act  or omission was unfit,  and  the  corporation was reckless in employing him or her] [: or]
        c) [ *the act or omission was that of a managerial employee who was acting in the scope of his or her employment*] [; or]
        d) [ the corporation, through its management or a managerial employee, ratified or approved the act or omission].
      This instruction is based on the requirements of *Restatement (Second) of Torts, Section 909* and the *Restatement (Second) of Agency, Section 217C.*

      **Hereto! the embodiment of the " Corporate Complicity [2] " concept is in placed.**

Ex - 3.  The *amount of Exemplary Damages* sought is
        a. [ __ ]  shown, pursuant to code of civil procedure section 425.10; Rule 54(d1)
        b. [ **x** ]  **$ 2,500,000.00**  [*unto the statute the law requires three times an amount*]
                              *there upon the actual damages*

---

    [1]. **Supreme Court: Treble Damages** ... Cohen v. De La Cruz, 532 U.S. 213 (1998)  citing ~ The debt for fraudently obtaining  $ 31,382.50  in  rent  payments  includes treble damages and attorney's fees and cost, petitioner's entire debt is $ 94,147.50 [plus attorney fee's and costs].  Grogan v. Garner, 498 U.S. 279, 287 citing ~ Debtor may not be discharged from, inter alia, obligations for money obtained by " actual fraud."  [See Attachment C]

    [2]. Punitive damages may be  awarded  against  a corporate defendant for acts of its agents and employees under the "corporate complicity rule", if the acts or omissions which proximately caused the injury were authorized or participated in by a superior officer of the defendant corporation. Kemner v. Monsanto Co., 217 Ill. App.3d 188, 160 Ill. Dec. 192, 576 N.E. 2d 1146 (Ill. App. 1991)

**)CONNECTICUT AVENUE NW, SUITE 800**

**H**

**ORIGINAL**

WASHINGTON, DC 20036   202-659-0700

**FILE COPY**

**HORNING BROTHERS**

RECEIVED
DATE: _Feb 16 th 07_
BY: _Henry W Geter II_

February 16, 2007

Henry Geter II
100 Michigan Ave. NE
Apt. #A11
Washington, DC 20017

## NOTICE TO CURE VIOLATION OF TENANCY OR VACATE

In accordance with the District of Columbia Rental Housing Act of 1985, D.C. Law 45 D.C. Section 2551(b) (1986) you are hereby given notice that you are violating the terms and conditions of your tenancy/lease in the following manner:

**By continually and habitually paying your rent late. According to your lease, the rent is due and payable on or before the first day of the rental period without notice or demand for the same.**

You are hereby given notice to cure this violation. Please be advised that this violation may be cured as follow:

**By paying the full amount of the rent due on or before the first day of the rental period commencing immediately after the expiration of this notice and every rental period thereafter. This notice will expire 30 days from the beginning of the next rental period after you received this notice. This notice will expire on March 31, 2007**

You must either correct the violation as provided herein or vacate the premises on or before the day after this notice expires. If you fail to correct this violation or vacate the premises, Horning Brothers Management will initiate an action for possession in the Landlord and Tenant Branch of the Superior Court of the District of Columbia. You will be required to pay rent and all outstanding charges during the period of your occupancy.

Finally, a copy of this Notice will be filed with the local HUD office and to the Rent Administrator, Department of Consumer and Regulatory Affairs, Rental Accommodations and Conversion Division, at 614 H Street, N.W. Room 423, Washington, D.C. 20001.

Sincerely,

Veda S. Binkley
Assistant Property Manager

*Index Exhibit 1*

Registration Number:
Exemption

Number:                                            95943

*ATTACHMENT A ...    MATERIAL EVIDENCE*

Fax Mailing #: **Horning Brothers**   12026599489
                 **The Cloisters**       12029861215

**ORIGINAL**

*INDEX EXHIBIT 2*

February 22nd, 2007

Veda S. Brinkley
Assistant Property Manager
**HORNING BROTHERS**
1350 Conn. Ave. N.W.   Suite 800
Washington, D.C. 20036

*TENANT OFFICIAL RESPONSE*
[ a 30 day response is requested ]

Re: *Notice To Cure Violation of Tenancy Or Vacate*

Dear Ms. Brinkley:
Having reviewed this Notice! I agree fully to its intent under the Law; *District of Columbia Rental Housing Act of 1985, D.C. Law 45 D.C. Section 2551(b) (1985).* Addressing a violation of the terms and conditions of my tenancy / lease, thereto the following manner... in stating:

**By continually and habitually paying your rent late. According to your lease, the rent is due and payable on or before the first day of the rental without notice or demand for the same.**

Further you establish ... *You must either correct the violation as provided herein or vacate the premises on or before the day after this notice expires. Expire Date: March 31st, 2007.*

In review of this matter! There are two key words ~ placed before your action [ hereto mentioned by this Notice], ... habitually, and violations.
   *D*ef. Habitual ...
          Violation... Violate...      being such by force of *habit* ~ *a customary practice*
                                    to break or disregard (e.g., *a law*)

While you have brought to my attention this *violation of the law*, it would be most fitting to now address another violation at this time; **Term:  Disability Rights in Housing**. Upon which you too have violated *[See attached Rights]*. For five (5) years management has denied my Rights. Why?

Here... *Federal laws* define a person with a disability as *" Any person who has a physical impairment that substantially limits one major life activities; has a record of such impairment; or is regard as having an impairment."*   And further stating; Regardless of whether you live in private or public housing, *Federal laws provide the following rights to persons with disabilities:*

* **Requires housing providers to make reasonable accommodations for persons with disabilities**.

pg 1
*ATTACHMENT B ...     MATERIAL EVIDENCE*

*Here it is foundation by law!* *A reasonable accommodation* is a change in rules, policies, practices, or services so that a person with a disability will have an equal opportunity to use and enjoy a dwell unit or common space. ~ That! Reasonable accommodations may be necessary at all stages of the housing process, *including* application, tenancy, or *to prevent eviction.*

Please bring to your attention, as mentioned above… THAT! *Major life activities include walking, performing manual tasks, and care for oneself.* Activities that may be common to healthy people like yourself, without the invasion of a major illness upon them. Yet are very, very difficult to me now.

You see Ms. Brinkey! I have *diabetes mellitus*, as a result of this illness! my feet have been amputated ~ cut off, to save my life. While I had no choice of this hardship, the hardship of being force out upon the street, due to … what you define as *habitual late payments*, can be address. Your choice removes my federal protection… to seek reasonable accommodation via unlawful policies. Whereto a major source of my income [ disability checks ] are not received until after the ( 1st) first. The reason for the late payments. Even under this issue, **I have been duly providing all late fee's as required by the lease.** It is my hope that Horning Brothers will not make changes of their policies, in seeking to not ~ renew my lease in the future. [Note: My Monthly Rent is $1,449.00 … yet you have received the following past payments … starting in October 06 - $1,505.00, November - $1,500.00, December - $1,530.00, and January 07 - $1,500.00… and yet none of these payments required me to pay these amounts, *of which no credit was forwarded to the next month payment …??? why ???* ] If so! This effort would be a *cause of action* on my behalf, to address any improper activity denying my equal opportunity to use and enjoy this dwelling unit A-11, as acknowledge to your *notice to vacate the premises.* In violation of my **Disability Rights.** *This content was placed unto the Cloisters records on October 26th, 2003.*

For the Record: *Illegal Retaliatory Evictions:*
**Q** What kinds of conduct by the landlord does the law consider retaliatory?
**A** Landlord - Tenant Laws define four actions as retaliatory: *eviction action or the threat of it, non-renewal of the lease, increasing of the rent, and decreasing of services*

I only ask! that as one who is disable ~ as mentioned by law … *A housing provider may not impose different application or qualification criteria, rental fees or sales prices, and rental or sales terms or conditions than those required of or provided to persons who are not disable.* While I am not being ask to be treated differently, *I am asking you to respect my Federal Rights.*

One must be reminded, that on the date of my entering this housing unit, I was void of this illness. I will do my best to cure the violation noted. However! *NOW* I am seek the reasonable **accommodation of the law, granted me, via the** *Disability Rights in Housing.* *Law Citing: If you are renting property and you become disabled then your landlord has to make provisions for your disability.*

pg 2

*To cure this issue*... the following is offer!  While I can not change the delivery date of my disability checks *from the Federal Government*, *which is establish by law*.  Surely management can *reasonable accommodate* a change in my monthly payments from the first (1ˢᵗ) of the month, to the fifteen (15ᵗʰ) ~ while keeping the late payment to be due/added after the 20ᵗʰ and 25ᵗʰ thereafter.  *And Too!*  Initiate the restoring of all payments legally due and bound, upon the disability, since Oct. 2003.  Reduce the rent amount to $890.00 per month; which would allow for payment of utilities.

As a resident of *The Cloisters*, for the past five years,  I have had no failure unto its rules, regulations, and or policies.  It is my wishes to continue this share understanding.

**Federal Law**: It is held to the main parts of the ... **Disability Discrimination Act 1995** *DDA - Part 3 - Provision of Goods, Facilities and Services.  Disposal or management of premises or land*.  *It requires service providers to " reasonable adjustments " for disabled people.  A service provider is required to take reasonable steps to : Change a practice, policy or procedure which makes it impossible or unreasonably difficult for disabled people to make use of its services.*

Mr. HW Geter II
Tenant  A-11

*P.S.  Allow the records to show that Ms. Connie Fletcher - Manager, The Cloisters, knew of this disability since October of 2003.  Thus knowing of this disability... Why did management deny the rights of this tenant which is required by law .  By this sequestering action ~ the Tenant by law, Now has a legal right to recovery [ in court ], fully ... all expenses incurred upon his payment of late charges and legal fees, brought upon him by the management past actions.*

*That management by its fail action, must now cure this ' DISCRIMINATION ', restoring those monies... where the records [ held by the tenant ] can show the amount of the overpayments made to the renting office, which then support the monies due him bears a legal suit, to any formal legal recovery action.*

*The Court Citing: where the government disability claim approval was provided to service providers where then the actions follow, were against the " reasonable adjustments " due the disability, this action defeated the purpose of the law, monies of recovery is deem lawfully due.*

Attachments (3) - *Disability Rights in Housing*
                    Received Notice - Date February 16, 2007

cc - Rent Administrator **RADC**
     Room 7280
     941 N. Capital Street, N.E.
     Washington, D.C. 20002
     *[Pending] Superior Court of
     The District of Columbia*

pg 3

GOVER~~MENT~~ENT OF THE DISTRICT OF COL~~UMB~~IA
Office of Human Rights

*ATTACHMENT G*



Judiciary Square Office
441 4th Street, NW, Suite 570N
Washington, DC 20001
Phone: (202) 727-4559  Fax: (202) 727-9589

Penn Branch Office
3220 Pennsylvania Avenue, SE, 1st Fl.
Washington, DC 20020
Phone: (202) 727-4559  Fax: (202) 645-6390

## LETTER OF DETERMINATION

**ORIGINAL**

*Via Certified/First Class Mail*

*INDEX EXHIBIT a*

June 18, 2007

Henry W. Geter II
100 Michigan Avenue, # A-11
Washington, DC 20017

RECEIVED
DATE: *June 22 '07*
BY: *Henry W Geter II*

Re:    ***Henry Geter v. Trinity Community LP, et al***
       OHR CASE NUMBER:        07-176-H
       HUD CASE NUMBER:        03-07-0283-8

Dear Mr. Geter:

The Office of Human Rights (hereinafter "OHR") has completed its investigation of the above captioned complaint. Henry Geter is referred to as **"COMPLAINANT."** Trinity Community LP is referred to as **"RESPONDENT ONE."** Veda S. Brinkley is referred to as **"RESPONDENT TWO."** Connie Fletcher is referred to as **"RESPONDENT THREE".**[1] Complainant's charge presented the following issues, which were investigated by the OHR:[1]

## ISSUES PRESENTED

Whether Respondent subjected Complainant to discrimination on the basis of his disability (diabetes, amputated feet) when Respondent delayed or denied granting Complainant's reasonable accommodation request of changing Complainant's rental payment due date to the 15th , rather than the 1st of the month.

## JURISDICTION

The Office of Human Rights ("OHR") has jurisdiction over complaints of discrimination filed within one year of the occurrence of an alleged discriminatory act that took place in the District of Columbia, or within one year of discovering the occurrence of such act. 4 DCMR § 702.1(a). Complainant was a tenant at 100 Michigan Ave., # A-11, Washington, DC 20017, at the time of

---

[1] Veda Brinkley and Connie Fletcher are administratively dismissed as Respondents, as they are employees of Respondent One and come under the auspices of *Respondeat* Superior/Vicarious Liability. Moreover, Respondent One is responsible for the actions of its employees.

*Henry Geter v. Trinity Community LP*
*OHR CASE NUMBER: 07-176-H*
*HUD CASE NUMBER: 03-07-0283-8*
*Page 2 of 12*

the alleged violation. Complainant filed this complaint with the OHR alleging that Respondent discriminated against him as detailed above, in violation of Section 804(f)(3)(B) of Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 ("FHAA") and in violation of Section 2-1402.21 (d)(3)(B) of the District of Columbia Human Rights Act ("DCHRA"), as amended.

Respondent One is the owner of the multi-family housing unit in the District of Columbia. Respondent Two and Three are employees of the property management company which provides management services for Respondent One. Respondents have sufficient minimal contacts within the District of Columbia, therefore, the OHR has jurisdiction over Respondents.

## FINDINGS OF FACT

The OHR's findings of fact were obtained from the following: (a) Complainants' sworn statement and rebuttal; (b) Respondents' sworn statement; and (c) Respondents' responses to Interrogatories and Requests for Documents and (d) OHR's fact finding conference. Based on its investigation, the OHR makes the following findings of fact:

The Cloisters is a multi-family apartment building with 352 units. Respondent One is the owner of the apartment building. Respondents Two and Three are employees for the management company that operates the facility. The facility is located at 100 Michigan Ave., Washington, DC 20017.

Complainant filed a complaint with the U.S. Department of Housing and Urban Development on March 15, 2007 alleging he was discriminated against by the Respondent based on disability (diabetes and amputated feet) when Respondent failed to grant Complainant's reasonable accommodation and allow him to pay his rent on the 15th, rather than the first of every month.

The OHR record contains Complainant's Notice of Award for his disability from the Social Security Administration effective May 30, 2003. The award denotes Complainant's payment will be issued on or about the second Wednesday of each month.

Complainant's monthly rental payment is $1418.00. Complainant received three (3) delinquent rental notices for the month of March 2007: March 6, 2007 for a balance due of $1,433.00; March 11, 2007 for $1448.00; and March 16, 2007 for $1,468.00. Complainant was charged three (3) late fees during March 2007. Complainant submitted a rental payment to the Cloisters Apartment in the amount of $1,510.00 on March 23, 2007. Complainant consistently paid his rent between the 16th and 18th of every month.

The OHR record contains a Notice to Cure Violation of Tenancy or Vacate issued to Complainant by Respondent One's property management company on February 16, 2007. The notice states:

> *"By Continually and habitually paying your rent late. According to your lease, the rent is due and payable on or before the first day of the rental period without notice or demand for the same."*

*Henry Geter v, Trinity Community LP*
*OHR CASE NUMBER:  07-176-H*
*HUD CASE NUMBER: 03-07-0283-8*
*Page 3 of 12 .*

The DCHRA and FHAA provide that it is unlawful for any person to refuse to make a reasonable accommodation in the rules, policies, practices, or services, when such accommodation may be necessary to afford such person equal opportunity to use and enjoy a dwelling unit including public use and common areas.

## Complainant's Allegations

Complainant alleges that he is disabled within the meaning of the FHA and the DCHRA. Complainant contends that he has diabetes, and mobility issues, specifically that his feet were amputated. Complainant alleges he was unable to work, and began receiving disability payments from Social Security. Complainant states he receives his disability payments once a month on the second Wednesday of the month. Complainant alleges that on or about October 20, 2003, he provided written medical documentation including a letter to Respondent's property management employee requesting a reasonable accommodation adjusting the due date of his rent based on when he receives his disability check so that he would not have to pay late charges every month.

Complainant asserts Respondents never provided Complainant with his reasonable accommodation request. Instead, Complainant states he continued to pay his rent late as he incurred a late fee every month. Complainant alleges there were no problems between he and Respondents until about November 2006 when he went to the rental office to pay his rent. Complainant claims Respondent's Accounting Clerk suggested to Complainant that he consider signing his Social Security check over to Respondents. Complainant states he refused to sign over the check to Respondents.

Complainant alleges that on or about February 17, 2007 he received a Notice to Cure from the Respondent One's Assistant Property Manager, advising him that Respondents would no longer accept late rent payments from Complainant.

Complainant alleges that on or about February 22, 2007 he sent a second request for a reasonable accommodation to Respondent's property manager mirroring the request made in 2003. Complainant asserts Respondents have not answered his latest request.

Complainant believes that Respondents are treating him differently with respect to terms and conditions or services and facilities based on his disability. Complainant believes that Respondents are forcing him out of his unit because of his disability. Complainant believes that Respondents failed to reasonably accommodate him by permitting him to pay his rent in the middle of the month without penalty.

## Complainant's Documents

Complainant submitted a faxed reasonable accommodation request dated February 22, 2007 addressed to Respondent Ones' property manager.

The confirmation form indicates the telephone number where the fax was sent is (202) 986-1215. The OHR investigation confirms this is the correct fax number for Respondent's property management office.

## Respondent's Defenses

Respondents maintains they have never received Complainant's reasonable accommodation request, and have no obligation to accommodate Complainant's reasonable accommodation request, because the request would change their policies, and the accommodation is not related to his disability.

Respondents state that Complainant is afforded the same opportunity to pay the rent as everyone else, and given the same amount of grace days to pay his rent on time without incurring late charges. Respondents maintain that rent payments are a contractual matter, and are unrelated to Complainant's disability.

Respondents note that when Complainant moved in during March 2003, he received a one-month concession on his rent, something which was given to all tenants at this time. Respondents declare that because of this one month rent-free concession given to Complainant, Complaint should actually be two (2) weeks early on his rent, not two weeks late.

Respondents also provided a list of seven (7) different residents whom they have granted reasonable accommodations for in the past year. These accommodations ranged from handicapped parking signs, to removing carpet and widening doorways, to unit transfers for residents.

## Complainant's Rebuttal to Respondent's Defenses

Complainant notes that he faxed the request to Respondent on February 24, 2007, and submitted the fax, and the transmission verification report which indicated the fax was successfully transmitted.

Complainant notes that reasonable accommodation requests are normally specifically asking to change a standard policy or rule because of a disability, so it is a violation not to grant a reasonable accommodation request because Respondent's standard policies would be changed. Complainant also notes that he did not become disabled until nine (9) months after he moved into Respondent's building, and thus he had no foreknowledge during which he could have applied the one month's free rent which was offered to all of the tenants upon move-in.

Finally, Complainant states that there have been other cases in which a landlord's refusal to extend payment dates for disabled residents have resulted in liability for the landlord.

## Respondent's Policies

The OHR investigation revealed that Respondent has a standard lease, signed by Complainant in February 2003, which states that the rent is due on the first of the month, with a grace period

until the fifth (5th) of the month.

## OHR Interviews

Respondent Two was asked if she had received the fax requesting a reasonable accommodation from Complainant. Respondent Two denied ever receiving the fax, or any of her employees ever receiving a fax requesting an accommodation from Complainant. Respondent Two was asked if she had received a fax, would she have granted Complainant's request. Respondent Two indicated that even if they had received the request, the accommodation still would not have been granted, because Respondent did not feel it was related to Complainant's disability, and that she then would have to grant other residents request to do the same thing as Complainant.

## STANDARD OF REVIEW

In order for a Complainant to prevail in this forum, the OHR must find that the OHR's record contains credible, probative, and substantial evidence from which a reasonable person could conclude that the *prima facie* elements of discriminatory behavior are present, and that a legitimate, nondiscriminatory explanation for the behavior either does not exist or is pretext for unlawful discrimination. 4 DCMR § 715.1; 4 DCMR § 499.1.

## LEGAL ANALYSIS

Under the Fair Housing Act, as amended (FHAA), it is unlawful for a housing provider to refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling including the public use and common areas. 42 USC § 3604(f)(3)(B).

Discrimination may be proven either by direct evidence of discrimination, evidenced by the actions or words of the Respondent, or indirectly, following a burden-shifting analysis. The burden-shifting procedure initially established in *McDonnell Douglas Corp. v. Green* with respect to employment discrimination is applied to housing discrimination cases under the DCHRA and FHAA, as amended. *See, e.g., Neithamer v. Brenneman Property Services, Inc.*, 81 F. Supp. 2d 1, 3 (D.D.C. 1999); *Miller v. Poretsky*, et al., 595. F.2d 780, 791-792 (D.C. Cir. 1978) (concurring opinion); *United Mine Workers of Am. Int'l Union v. Moore*, 717 A.2d 332, 338 (D.C. 1998); *Atlantic Richfield Co. v. District of Columbia Comm'n on Human Rights*, 515 A.2d 1095, 1099 (D.C. 1986); *Hall v. Lowder Realty Co.*, 160 F.Supp.2d 1299, 1313-14 (M.D. Ala. 2001).

A plaintiff may prove discrimination under the FHAA by showing: (1) discriminatory effect, "disparate impact," (2) intentional discrimination, "disparate treatment," or (3) failure to provide reasonable accommodation. *T.K. v. Landmark West*, 802 A.2d 609, (N.J. 2001). Under the DCHRA, the same three-part test applicable to Title VII cases applies. *Atlantic Richfield Co. v. District of Columbia Comm'n on Human Rights*, 515 A.2d 1095, 1099 (D.C. 1986). The initial burden is on the Complainant to prove his *prima facie* case of discrimination. *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 361 (D.C. 1993*); see Texas Department of Community Affairs*

*v. Burdine*, 450 U.S. 248 (1981). If the Complainant satisfies his burden, he raises a rebuttable presumption that the Respondent's conduct is unlawful discrimination. *Arthur Young*, 631 A.2d at 361. After this rebuttable presumption is raised, the Respondent must then articulate "some legitimate, nondiscriminatory reason for the employment action." *Atlantic Richfield*, 515 A.2d at 1099 (citing *Burdine*, 450 U.S. at 254). The Respondent can "satisfy its burden by producing admissible evidence from which the trier of fact [can] rationally conclude that its action [was not] motivated by discriminatory animus." *Atlantic Richfield*, 515 A.2d at 1099-1100. The Respondent need not persuade the "[trier of fact] that it was actually motivated by the proffered reasons." *Burdine*, 450 U.S. at 254.

If the Respondent articulates a legitimate, nondiscriminatory reason for its action, "the burden shifts back to the Complainant to prove…that the Respondent's stated justification for its action 'was not its true reason but was in fact merely a pretext' to disguise discriminatory practice." *Arthur Young*, 631 A.2d at 361 (citation omitted). "This burden merges with the ultimate burden of persuasion on the question of intentional discrimination." *Atlantic Richfield*, 515 A.2d at 1100. "[A]lthough the *McDonnell Douglas* presumption shifts the burden of production to the defendant, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993)(quoting *Burdine*, 450 U.S. at 253).

Thus, once the Respondent satisfies its burden of producing a nondiscriminatory reason for its action, the Complainant must show "both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center*, 509 U.S. at 515 (emphasis in original). It is not enough for the Complainant simply to show that the Respondent's proffered reason for its action was pre-textual, although that will "often considerably assist him in doing so." *St. Mary's Honor Center*, 509 U.S. at 517; *see also Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). The Complainant must also prove "that the Respondent has unlawfully discriminated." *St. Mary's Honor Center*, 509 U.S. at 514. While pretext in the proffered reason for the action may, "in appropriate circumstances" justify an "inference" of discrimination, *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000), a Plaintiff is never relieved of the burden of proving "that the Respondent has unlawfully discriminated." *St. Mary's Honor Center*, 509 U.S. at 514. In fact, judgment as a matter of law would be appropriate for the Respondent (i) "…if the record conclusively revealed some other, nondiscriminatory reason for the Respondent's decision…," or (ii) the plaintiff's factual challenge to the Respondent's articulated reasons was "weak" and there was "abundant and uncontroverted" independent evidence that no discrimination had occurred. *Reeves* at 148.

## FAILURE TO ACCOMMODATE A DISABILITY UNDER THE FHAA AND THE DCHRA

To establish a reasonable accommodation defense under the Fair Housing Act, the tenant must demonstrate that (1) she suffered from a "handicap" (or "disability"), (2) the landlord knew or should have known of the disability, (3) an accommodation of the disability may be necessary to afford the tenant an equal opportunity to use and enjoy her apartment, (4) the tenant requested a reasonable accommodation, and (5) the landlord refused to grant a reasonable accommodation. *See ;United States v. California Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1380 (9th Cir.

1997); *Prindable v. Association of Apt. Owners of 2987 Kalakaua*, 304 F. Supp. 2d 1245, 1254 (D. Haw. 2003); *Adam v. Linn-Benton Hous. Auth.*, 147 F. Supp. 2d 1044, 1047 (D. Or. 2001); *Means v. City of Dayton*, 111 F. Supp. 2d 969, 977 (S.D. Ohio 2000); *In re Kenna Homes Coop. Corp.*, 210 W. Va. 380, 557 S.E.2d 787, 794 (W.Va. 2001).

The federal Fair Housing Act does not require that a dwelling be made available to an individual whose tenancy would constitute a direct threat to the health or safety of other individuals or whose tenancy would result in substantial physical damage to the property of others. 42 USC §§ 3604 (f)(9) (2001); DC Code §§ 2-1402.21 (2001) The Act's administrators, as well as the courts, have also ruled that an accommodation will not be reasonable, and thus will not be required, if it would impose an undue financial and administrative burden on the landlord or would fundamentally alter the nature of the landlord's operation. Joint Statement of the Department of Housing and Urban Development and the Department of Justice, Reasonable Accommodations under the Fair Housing Act (May 17, 2004).

Under the federal Fair Housing Act, unlawful discrimination occurs whenever a dwelling is denied to a renter because of that renter's disability. *Radecki v Joura*, 114 F3d 115 (8th Cir 1997). Under federal case law interpreting that provision, a discriminatory denial can occur at any time during the entire period before a tenant is "actually evicted;" actionable discrimination is not limited to the shorter cure period specified in a notice to cure or quit, or to any other period short of the eviction order itself. As a general rule, therefore, a "reasonable accommodation" defense is available at any time before a judgment of possession has been entered, if the other requirements of the defense are met.

Under the federal Fair Housing Act, a landlord is only obligated to provide a reasonable accommodation to a tenant if a request for the accommodation has been made. Joint Statement 11. A tenant who requests a reasonable accommodation, moreover, should make clear to the landlord that she is requesting an exception, change, or adjustment to a rule, policy, practice, or service because of her disability. *Id.* And she should explain what type of accommodation she is requesting. On the other hand, the Fair Housing Act does not require that a request be made in a particular manner.

Under the Act, a tenant's failure to make clear in her initial request what type of accommodation he or she is requesting is not fatal. According to applicable case law, including an administrative adjudication by the Department of Housing and Urban Development itself, once the tenant requests a "reasonable accommodation" (or, without using those exact words, requests an accommodation for a disability), the landlord is obliged under the Act to respond promptly. (See, Joint Statement, "landlord has an obligation to provide prompt responses to reasonable accommodation requests.") If the request is not sufficiently detailed to reveal the nature of that request, the Act - as properly interpreted - requires the landlord to "open a dialogue" with the tenant, eliciting more information as needed, to determine what specifics the tenant has in mind and whether such accommodation would, in fact, be reasonable under the circumstances. Any delay from the landlord's failure to respond promptly to the tenant's request may become the landlord's responsibility.

Until a landlord makes a good faith, reasonable effort for an accommodation, upon request, after learning of a tenant's mental impairment, the landlord's continued pursuit of a pending action for possession is a discriminatory act under the federal Fair Housing Act.

## THE INTERACTIVE PROCESS

Although neither statutory language in the Fair Housing Act nor its implementing regulations expressly require an "interactive process" for resolving requests for reasonable accommodations, several courts have indicated that the Act's statutory scheme inherently imposes such a requirement. *Jankowski v Lee and Associates, v Cisneros*, 91 F3d 891, 895 (7th Cir 1996) (if landlord is "skeptical of" tenant's alleged disability or landlord's ability to provide accommodation, "it is incumbent upon [] landlord to request documentation or open a dialogue"); *Jacobs v Concord Vill. Condo. X Assn*, 2004 US Dist LEXIS 4876, AT *5 (D. FL Feb 17, 2004); *Armant v Chat-Ro Co*, LLC, No 00-1402, 2000 US Dist LEXIS 11386, at *6 (ED La Aug 1, 2000); (quoting *Jankowski Lee & Assocs.* and further holding that once apprised of possible disability, landlord has duty to inquire or investigate further);*Auburn Wood I Homeowners Assn. v Fair Employment & Housing Comm.* (2004) 121 Cal. App. 4th 1578, 1598 [18 Cal Rptr 3d 669, 683] (quoting *Jankowski Lee & Assocs.* and further holding that obligation to "open a dialogue" with party requesting reasonable accommodation is part of interactive process in which each party seeks and shares information);*Cornell v Taylor LLP v Moore*, 200 Minn. App LEXIS 1317, at *11 (Min App Div Dec. 22, 2000)(quoting *Jankowski Lee & Assocs.*); *Cobble Hill Apts. Co*, 1999 Mass. App. Div. at 169 (the fact that tenant's reasonable accommodation request is neither specific nor suitable "does not relieve landlord from making one, particularly when tenant is handicapped by mental disability"). Compare *Andover Housing Authority v Shkolnik*, 443 Mass. 300, 820 NE 2d 815 (Mass. 2005) (housing authority did not violate "reasonable accommodation" requirement when evicting excessively noisy tenant, because housing authority had "made every effort to engage in an interactive process for ascertaining and accommodating [tenant's] condition" while tenants "impeded the authority's efforts to engage in a full interactive dialogue" by denying "that there was an ongoing and excessive noise problem"). *See generally* Jennifer L. Dolak

The U.S. Department of Housing and Urban Development has also taken this position. *See HUD v. Jankowski Lee & Assocs.*, HUDALJ 05-93-0517-1 (June 30, 1995) (once informed of the possibility that a tenant may need an accommodation, a landlord has the responsibility to explore that need and suggest accommodations). The HUD-DOJ Joint Statement explicitly calls for an "interactive process" in which the landlord and tenant "discuss the [tenant's] disability-related need for the requested accommodation and possible alternative accommodations," in the hope of negotiating "an effective accommodation for the [tenant] that does not pose an undue financial and administrative burden for the [landlord]." Joint Statement 7; *see id.* 9. Finally, when courts apply the reasonable accommodation provision of the Fair Housing Act, it is their established practice to rely on the Americans with Disabilities Act (ADA),42 USC §§ 12101, 12102, and the Rehabilitation Act (RA), 29 USC § 794, both of which mandate an interactive process through which employers and employees explore what accommodations are reasonable. *See* 29 C.F.R. § 1630.2 (o)(3) (1995); 29 C.F.R. pt. 1630 Appendix (1996); 29 USC § 794 (d); *Giebeler*, 343 F3d at 1156-57 (stating that court ordinarily applies RA case law in applying reasonable accommodation provisions of Fair Housing Act and also generally applies RA and ADA case

law "interchangeably"); *Good Shepherd Manor Foundation, Inc. v City of Momence*, 323 F3d 557, 561 (7th Cir 2003) (holding that Fair Housing Act requirements for showing failure to reasonably accommodate are same as those under ADA); *Shapiro*, 51 F3d at 335 ("reasonable accommodation" was intended to draw on case law under RA); *Erdman v City of Fort Atkinson*, 84 F3d 960, 962 (7th Cir. 1996) ("reasonable accommodation" requirement of Fair Housing Act is most often interpreted by analogy to same phrase in RA). The case law that the landlord relies on is factually distinguishable. *See, Lapid-Laurel v Zoning Board of Adjustment*, 284 F3d 442, 455 (3rd Cir. 2002) (holding that Fair Housing Act imposes no duty on local land use authorities to engage in informal interactive process with applicants for variance because those authorities "already face detailed state and municipal requirements mandating formal procedures, which, at least in some cases, prohibit them from engaging in informal, off-the-record negotiations"); *Groner*, 250 F3d at 1047 (holding that landlord violated no duty to engage in dialogue with social worker when landlord had already been in close contact with social worker for months). The Joint Statement 11 states that "An undue delay in responding to a reasonable accommodation request may be deemed to be a failure to provide a reasonable accommodation."

In a discrimination claim under the federal Fair Housing Act, when a tenant proposes a coherent, ostensible feasible accommodation responsive to her disability, the burden shifts to the landlord to ask for whatever additional details it considers necessary to evaluate that proposal. A landlord's obligation to elicit additional information about a basically understandable accommodation is no different from its obligation to fill out the details about a tenant's announced illness or elicit her reasons why a requested accommodation will alleviate her disability.

## DISABILITY

Under the DCHRA, a Plaintiff can establish that he has a disability if: (1) the Plaintiff has a physical impairment that "substantially limits" one or more of the Plaintiff's "major life activities;" (2) there exists a record of a physical or mental impairment whereby the Plaintiff has been classified (or misclassified) as having an impairment that "substantially limits" one or more of his "major life activities;"[2] or (3) the Plaintiff has a physical or mental impairment that the Defendant erroneously believes substantially affects one or more of the Plaintiff's "major life activities." *See,* 42 U.S.C. § 12102(2); *Liff v. Secretary of Transportation*, 1994 U.S. Dist. LEXIS 20970. The Plaintiff may establish that he suffered from a disability by sufficiently proving any one of the foregoing three elements. *Grant v. May*, 786 A.2d 580, 583 (D.C. 2001); *Cook v. RhodeIsland*, 10 F.3d 17, 22-23 (1st Cir. 1993); *Chandler v. City of Dallas*, 2 F.3d 1385, 1392 (5th Cir. 1993). However, Plaintiffs attempting to establish a qualified disability are held to a "demanding standard" in recognition that the ADA was intended to protect only those persons with impairments that preclude the performance of activities that are of central importance to daily life. *Toyota Motor Manufacturing v. Williams*, 534 U.S. 184, 197.

---

[2] The Respondent must be aware of this history.

A disability is defined as a "physical or mental impairment that substantially limits one or more of the major life activities of an individual having a record of such an impairment or being regarded as having such an impairment." D.C. Official Code § 2-1401-02(5A).[3]  A physical impairment is "any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine." *Toyota*, 534 U.S. at 195-96. The ADA regulations define mental impairment as "any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(i). The term "impairment" does not include "transitory illnesses which have no permanent effect on the person's health." *Stevens v. Stubbs*, 576 F. Supp. 1409 (D. Ga. 1983). Instead, a disability must be a serious injury or impairment of more than a temporary nature. *Providence Journal Co. v. Mason*, 116 R.I. 614, 359 A.2d 682 (1976); *Lyons v. Heritage House Restaurants, Inc.*, 432 N.E.2d 270 (Ill. 1982).

A physical or mental impairment "substantially limits" when it considerably limits or limits "major life activities" to a large degree. *Toyota*, 534 U.S. at 196-97. "Major life activities" are those activities that are of central importance to daily life. *Id.* This jurisdiction has defined "major life activities" as functions the average person in the general population can perform with little or no difficulty, including, but not limited to, walking, seeing, hearing, breathing, standing, sitting and working. *Croley v. Republican Nat'l Comm.*, 759 A.2d 682 (D.C. 2000). *Cf. Toyota, supra,* 534 U.S. at 200 ("because of the conceptual difficulties inherent in the argument that working is a major life activity, [the Supreme Court has] been hesitant to hold [that working is a major life activity]"). To make the *prima facie* showing, the employee must present evidence as to the nature and severity of her impairment, its duration or expected duration and the permanent or long-term impact. *Toyota*, 534 U.S. at 198.

In cases where a Complainant alleges that he/she was denied a reasonable accommodation, the Complainant must demonstrate that he/she requested an accommodation, *Evans v. Davis Memorial Goodwill Industries*, 133 F. Supp. 2d 24, 27-28, *aff'd* 2001 U.S. App. LEXIS 28415, described the accommodation sought, *Flemmings* at 861; *Heasley* at 165, and that the Respondent denied the request. *Evans* at 27-28.

***Complainant demonstrates that Respondent refused to make a reasonable accommodation for his disability.***

Complainant alleges that Respondent failed to accommodate his disability when Respondent denied or delayed granting Complainant's reasonable accommodation request of allowing him to change the due date on his rent from the first of the month to the 15th.

Complainant establishes a *prima facie* case for discrimination on the basis of his disability. Complainant establishes the first element by virtue of his membership in a protected class under the DCHRA and ADA (disability). Based on information in the OHR record, Complainant has a

---

[3] This definition is substantially similar to the ADA's definition of disability: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

*Henry Geter v. Trinity Community LP*
*OHR CASE NUMBER: 07-176-H*
*HUD CASE NUMBER: 03-07-0283-8*
*Page 11 of 12*

physical impairment because he has demonstrated that he has a "physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine. Complainant has an endocrine/metabolic disorder (diabetes) and it resulted in an anatomical loss, amputation. Complainant has also demonstrated that his physical impairment substantially limits one or more of his major life activities. Complainant cannot ambulate, therefore, his mobility and his ability to work is substantially limited. Furthermore, there exists a record of a physical or mental impairment whereby the Complainant has been classified as having an impairment that "substantially limits" one or more of his "major life activities.[4] Complainant also meets the second element. The landlord knew or should have known of the disability. In addition, this accommodation of the disability may be necessary to afford the tenant an equal opportunity to use and enjoy her apartment. Complainant demonstrated that he requested a reasonable accommodation; he asked that the date for rent be changed to the 15th of the month. Finally, the Respondent refused to grant a reasonable accommodation. Therefore, Complainant establishes a *prima facie* case.

Respondent does not establish that granting the reasonable accommodation would be an undue burden. Respondents maintains they have never received Complainant's reasonable accommodation request, and have no obligation to accommodate Complainant's reasonable accommodation request, because the request would change their policies, and the accommodation is not related to his disability.

Respondent states that Complainant is afforded the same opportunity to pay the rent as everyone else, and given the same amount of grace days to pay his rent on time without incurring late charges. Respondents maintain that rent payments are a contractual matter, and are unrelated to Complainant's disability. Finally, Respondents note that when Complainant moved in during March 2003, he received a one-month concession on his rent, something which was given to all tenants at this time. Respondents declare that because of this one month rent-free concession given to Complainant, Complaint should actually be two (2) weeks early on his rent, not two weeks late.

Respondent's reasons for denying Complainant's accommodation are weak and discriminatory. To begin, under the DCHRA and the ADA, Respondent has an absolute obligation to accommodate Complainant's disability[5] or at the very least engage in the interactive process, even if it means changing its policies and practices. This is the basis for requesting an accommodation. Second, Respondent contends that the accommodation has nothing to do with Complainant's disability. Complainant has demonstrated he has a disability; and he receives his disability checks on the second Wednesday of the month. Therefore, he is asking for this accommodation because he receives the checks **for his disability** and inability to work after the first of every month. (*emphasis added*) Respondent's reasoning is unconvincing; and it is almost incredible that it gives this explanation for its denial or that it denied this nominal request.

---

[4] The Respondent must be aware of this history.
[5] Unless proving an undue burden.

*Henry Geter v. Trinity Community LP*
*OHR CASE NUMBER: 07-176-H*
*HUD CASE NUMBER: 03-07-0283-8*
*Page 12 of 12*

## CAUSE DETERMINATION

For the foregoing reasons,

1) **RESPONDENTS TWO (Veronica Brinkley)** and **RESPONDENT THREE (Connie Fletcher)** are **ADMINISTRATIVELY DISMISSED** as **RESPONDENT ONE** is the proper party in this dispute.

2) The OHR finds **PROBABLE CAUSE** to believe that Respondents One subjected Complainant to discrimination on the based on disability (diabetes and amputated limbs) when Respondent denied or delayed in granting Complainant's request of allowing him to change the due date of his rent from the first to the 15th of the month.

Respondents are requested to notify the OHR within ten (10) days after receipt of this letter of Determination as to whether they are prepared to pursue conciliation of this matter. If Respondents do not respond or do not respond in the affirmative, the OHR will issue a service of charge notifying the Complainants that they can elect to have this case processed for public hearing before the District of Columbia Commission on Human Rights or referred to the District of Columbia Office of the Attorney General for civil enforcement action in a court of competent jurisdiction.

*IT IS SO ORDERED.*

Sincerely,

Gustavo F. Velasquez
Director

cc:     Phillip L. Felts, Esq.
        Schuman & Felts, CHTD
        4804 Moorland Lane
        Bethesda, MD 20814

*Index Exhibit b*

Mrs. Veda S Brinkley:                                               **Record Log 50000**

This *Accounting Notice* is reviewed to the Payment of Record... And! Is given to! the receivership of the *TENANT OFFICIAL RESPONSE* dated February 22nd 20007 upon which was faxed to the following number ... 12026599489 @ Horning Brothers to Mrs. Veda S. Brinkey , where to a copy was place to the Cloisters ... 12029861215.

*ACCOUNT NOTICE*... HW Geter II          *OFFICIAL LOG RECORDS OF PAYMENTS*
     Tenant A-11 Cloisters                   *Held to Tenant Log Records ... Xerox Copies*

*The following Payments have been received ... Starting After October 6, 2003*     **FILE COPY**

| Mo/Yr 03 - 07 | | Payment Amounts | Adjustments Due | | Amounts Due | |
|---|---|---|---|---|---|---|
| November | 03 | 50754...$1325.00 | ... - | $890.00 | ... - | $435.00 |
| December | 03 | 50755...$1375.00 | ... - | $890.00 | ... - | $485.00 |
| January | 04 | 50756...$1375.00 | ... - | $890.00 | ... - | $485.00 |
| February | 04 | 50757...$1405.00 | ... - | $890.00 | ... - | $515.00 |
| March | 04 | 50758...$1325.00 | ... - | $890.00 | ... - | $435.00 |
| April | 04 | 50759...$1352.00 | ... - | $890.00 | ... - | $462.00 |
| May | 04 | 50760...$1377.00 | ... - | $890.00 | ... - | $487.00 |
| June | 04 | 50761...$1422.00 | ... - | $890.00 | ... - | $532.00 |
| July | 04 | 50762...$1412.00 | ... - | $890.00 | ... - | $522.00 |
| August | 04 | 50763...$1383.00 | ... - | $890.00 | ... - | $493.00 |
| September | 04 | 50764...$1367.00 | ... - | $890.00 | ... - | $477.00 |
| October | 04 | 50765...$1367.00 | ... - | $890.00 | ... - | $477.00 |
| November | 04 | 50766...$1432.00 | ... - | $890.00 | ... - | $542.00 |
| December | 04 | 50767...$1504.00 | ... - | $890.00 | ... - | $614.00 |
| January | 05 | 50768...$1432.00 | ... - | $890.00 | ... - | $542.00 |
| February | 05 | 50769...$1432.00 | ... - | $890.00 | ... - | $542.00 |
| March | 05 | 50770...$1352.00 | ... - | $890.00 | ... - | $462.00 |
| April | 05 | 50771...$1550.00 | ... - | $890.00 | ... - | $660.00 |
| May | 05 | 50772...$1420.00 | ... - | $890.00 | ... - | $530.00 |
| June | 05 | 50773...$1615.00 | ... - | $890.00 | ... - | $725.00 |
| July | 05 | 50774...$1673.00 | ... - | $890.00 | ... - | $783.00 |
| August | 05 | 50775...$1366.37 | ... - | $890.00 | ... - | $476.37 |
| September | 05 | 50776...$1393.00 | ... - | $890.00 | ... - | $503.00 |
| October | 05 | 50777...$1393.00 | ... - | $890.00 | ... - | $503.00 |
| November | 05 | 50778...$1393.00 | ... - | $890.00 | ... - | $503.00 |
| December | 05 | 50779...$1393.00 | ... - | $890.00 | ... - | $503.00 |

pg 1

*ATTACHMENT C ...    MATERIAL EVIDENCE*



| Mo/Yr  03 - 07 | | Payment Amounts | Adjustments Due | | | Amounts Due | | |
|---|---|---|---|---|---|---|---|---|
| January | 06 | 50780 ... $1453.00 | ... | - | $890.00 | ... | - | $563.00 |
| February | 06 | 50781 ... $1453.00 | ... | - | $890.00 | ... | - | $563.00 |
| March | 06 | 50782 ... $1318.00 | ... | - | $890.00 | ... | - | $428.00 |
| April | 06 | 50873 ... $1500.00 | ... | - | $890.00 | ... | - | $610.00 |
| May | 06 | 50874 ... $1500.00 | ... | - | $890.00 | ... | - | $610.00 |
| June | 06 | 50875 ... $1420.00 | ... | - | $890.00 | ... | - | $530.00 |
| July | 06 | 50876 ... $1479.00 | .. | - | $890.00 | ... | - | $589.00 |
| August | 06 | 50877 ... $1500.00 | ... | - | $890.00 | ... | - | $610.00 |
| September | 06 | 50878 ... $1495.00 | .. | - | $890.00 | ... | - | $605.00 |
| October | 06 | 50879 ... $1505.00 | ... | - | $890.00 | ... | - | $615.00 |
| November | 06 | 50880 ... $1500.00 | ... | - | $890.00 | ... | - | $610.00 |
| December | 06 | 50881 ... $1530.00 | ... | - | $890.00 | ... | - | $640.00 |
| January | 07 | 50882 ... $1500.00 | ... | - | $890.00 | ... | - | $610.00 |
| February | 07 | 50883 ... $1530.00 | ... | - | $890.00 | ... | - | $640.00 |

Total Due
Amount:

$21,916.37

Allow this Fax... to establish my intention to go before the Courts to restore (make whole) to me, the Disability Payments removed ... via  the inactions  of Management of the Cloisters [Horning Brothers], to make "Reasonable Accommodations" given to my _Di_sable as per the law ~ Disability Rights in Housing... duly states. It is my hope that the _Total Due Amount_,  would be acknowledge and appropriate actions taken to address this fault of management unto a open manner [ _having no need for court actions_ ].

Mr. HW Geter II

February 28ᵗʰ 2007

_**P.S.  Only  personal  from the 'Rent Administrator Office' will be given access to bring into review... the authenticity of  the payment  records.**_

cc - Rent Administrator RADC
    Cloisters - Management

pg 2

*INDEX EXHIBIT C*

COMPLAIN STANDING TO SUE DOCUMENT



ATTACHMENT 'A'

# UNTO THE FEDERAL LAWS

**COMPANY PROFILE: Horning Brothers ~ Private Company** ... founded by brothers Joseph and Larry Horning in 1958; Headquarters Location 1350 Connecticut Ave., Ste. 800 Washington DC United States  (202) 659-0700, (202) 659-9489 fax **Management of properties and communities as ... *The Cloisters***



The defining Legal rights and obligations of the Corporation ~ *the ability to sign CONTRACT*

Section 1983 plaintiff must show defendant's personal involvement or participation, or direct responsibility for conditions of which he complains by demonstrating causal link between defendant's conduct and plaintiff's injury. 42 U.S.C.A. Section 1983  *Reed v. McBride, 96 F. Supp. 2d 845.*

State of California
Department of Fair Employment and Housing

# DFEH News Brief

**November 4, 2005**
**For Immediate Release**

**FILE COPY**

**CONTACT:   Regina J. Brown**
**(916) 799-2309**
**(916) 478-7247**

## TENANT RECEIVES $ 1MILLION SETTLEMENT IN DISABILITY DISCRIMINATION LAWSUIT; LANDLORD REFUSED TO ACCOMMODATE TENANT WITH ACCESSIBLE PARKING

**Sacramento –** The Department of Fair Employment and Housing (DFEH) today announced a $1 million settlement of a disability discrimination lawsuit brought by DFEH against a San Francisco landlord who refused a tenant's request for an accessible parking space. This settlement is the largest in DFEH history for a housing discrimination case.   *ATTACHMENT "B"*

"I hope that this case sends a strong reminder to housing providers of the legal obligation to provide reasonable accommodation for tenants with disabilities," said DFEH Director Suzanne M. Ambrose. "Housing providers cannot simply disregard or ignore a tenant's request for a reasonable accommodation. Something as reasonable as providing an accessible parking space or an extra key for a caregiver does not impose an economic hardship for a housing provider, but significantly enhances the quality of life for a person with severe degenerative joint disease."

In a lawsuit filed in San Francisco County Superior Court, the DFEH contended that in May 2000, the owners of an apartment building violated the civil rights of a tenant, Shirley Carper, who has severe degenerative joint disease. The landlord, 2001 California Partnership, refused her request for reasonable accommodation of her disability.

Ms. Carper, a tenant for 24 years of an apartment building on California Street, in San Francisco, requested a reasonable accommodation for an accessible parking space, and extra keys for her live-in caregiver. The building owner denied her request for an accommodation. The tenant contacted the DFEH and Project Sentinel, a nonprofit organization that deals with housing discrimination. Project Sentinel was a real party in

ATTCHMENT  G - MATERIAL EVIDENCE

*Henry W Salay*
*MArch 15th 2007*

*INDEX ExHIBIT d*

interest in the lawsuit. For the next three years, Ms. Carper fought for her parking space. It was only after the DFEH filed a lawsuit that the parking space was granted.

After an eight day trial and a full day of deliberations, the jury found the landlord liable for disability harassment and denial of a reasonable accommodation and awarded compensatory damages. Before the jury returned to deliberate on the amount of punitive damages to award, the parties settled the case for $1 million in compensatory damages and affirmative relief. The affirmative relief includes requiring the landlord to: develop and disseminate to all residents a written policy regarding their right to receive, and the owner's duty to provide, reasonable accommodation under the Fair Employment and Housing Act (FEHA), undergo training regarding the duties of a landlord under the FEHA, and post the court's order that the landlord violated the FEHA.

DFEH enforces laws prohibiting discrimination in employment, housing, public accommodations and acts of hate violence. Further information about DFEH and its services may be obtained by visiting the Department's web site at www.dfeh.ca.gov or by calling (800) 884-1684.

###

PR-10-05/DFEH